**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                                              Case No. 13-13096-PGH

**JEFFREY MARC SISKIND,**                                  Chapter 11

      **Debtor.**

_____/

**NOTICE OF FILING EXHIBITS CONCERNING RECORD ACTIVITIES OF CHANCE &**
**ANTHEM, LLC IN THE SOUTHERN DISTRICT OF FLORIDA SUPPLEMENTAL TO**
**EMERGENCY MOTION TO TRANSFER VENUE AND RULE 9011 MOTION FOR**
**SANCTIONS FOR ATTORNEY MISCONDUCT OF JEFFREY MARC SISKIND**
**[re: ECF Nos. 695, 741 and 723]**

      Movants/Creditors/Interested Parties, Christopher George, 3485 Lago De Talavera Trust, David Fiore and Frederick Volkwein, hereby give notice of the filing of the following copies of pertinent public records concerning assets, transfers and liabilities of Chance & Anthem, LLC in the Southern District of Florida.  This filing is intended as supplemental to Movants' Motion to Transfer Venue, etc. [ECF No. 695] and the Motion for Sanctions Pursuant to Rule 9011 for Attorney Misconduct of Jeffrey M. Siskind, Esq. Supplemental to Emergency Motion to Transfer Venue.

| | |
|---|---|
| Exhibit 1 | August 25, 2015 Special Warranty Deed from JPMorgan Chase Bank to **Chance & Anthem, LLC** ($1,250,000) – 3445 Santa Barbara Drive, Wellington, FL |
| Exhibit 2 | November 6, 2015 Mortgage from **Chance & Anthem, LLC** to New Wave Residential, LLC ($812,500) – 3445 Santa Barbara Drive, Wellington, FL |
| Exhibit 3 | March 23, 2016 Mortgage from **Chance & Anthem, LLC** to ABK South Properties, LLC ($500,000) – 3445 Santa Barbara Drive, Wellington, FL |

EXHIBIT 2

Exhibit 4       February 22, 2017 Assignment of Mortgage and Other Loan Documents from New Wave Lenders (2015-B), LP to **Wellington 3445, LP** ("Delaware Limited Partnership")

Exhibit 5       February 16, 2017 Certificate of Limited Partnership, **Wellington 3445, LP** filed with the Florida Division of Corporations as a Florida Limited Partnership showing **Zokaites Contracting FL LLC** as the General Partner and **Jeffrey M. Siskind** as Registered Agent

Exhibit 6       February 13, 2017 Electronic Articles of Organization for Florida Limited Liability Company **Zokaites Contracting FL, LLC** showing **Jeffrey M. Siskind** as Registered Agent

Exhibit 7       May 12, 2017 Final Judgment of Foreclosure (for Plaintiff) in the matter of **Wellington 3445, LP vs. Chance & Anthem, LLC, Jeffrey M. Siskind, ABK South Properties, LLC, 3Gen VC, LLC, N&P Construction and Development, Inc., PTM Electric, Inc. and David Fiore**. 15th Judicial Circuit, Palm Beach County, Florida; Case No. 50-2016-CA-012543-XXXX-MB. ($1,043,350.08) 3445 Santa Barbara Drive, Wellington, FL

Exhibit 8       July 5, 2017 Certificate of Title issued to **Wellington 3445, LP** concerning the property located at 3445 Santa Barbara Drive, Wellington, FL

Exhibit 9       December 2, 2015 Assignment of Mortgage from George A. Maler to **Chance & Anthem, LLC** concerning real property described as Condominium Unit No. B-6 of Cross Creek, a Condominium (O.R. Book 3262, Page 1812, Public Records of Palm Beach County, Florida).

| | |
|---|---|
| <u>Exhibit 10</u> | August 1, 2017 Notice of Lis Pendens filed by **Chance & Anthem, LLC** vs. Imitiaz Mohammed and Zoreeda Mohammad, et al. concerning real property described as Condominium Unit No. B-6 of Cross Creek, a Condominium (O.R. Book 3262, Page 1812, Public Records of Palm Beach County, Florida). |
| <u>Exhibit 11</u> | October 12, 2017 Assignment of Mortgage from **Chance & Anthem, LLC** to **Zokaites Properties, LP** concerning real property described as Condominium Unit No. B-6 of Cross Creek, a Condominium (O.R. Book 3262, Page 1812, Public Records of Palm Beach County, Florida). |

**Dated: <u>March 31, 2018</u>**

Respectfully submitted,

**McLAUGHLIN & STERN PLLC**
CityPlace Office Tower – Suite 1700
525 Okeechobee Boulevard
West Palm Beach, FL 33401
Tel: (561) 659-4020 Ext. 3027
*Counsel for Creditors/Movants/Interested Parties, Christopher George, 3485 Lago De Talavera Trust, David Fiore and Frederick Volkwein*

By: _/s/ Steven S. Newburgh_
    STEVEN S. NEWBURGH, ESQ.
    Florida Bar No. 348619

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished this 31st day of March, 2018, via CM/ECF to all persons authorized to receive notices, electronically, as set forth on the attached Service List and by U.S. Mail, postage prepaid, to all parties listed on the attached Service List who are not authorized to receive notices, electronically, through the Court's CM/ECF system in addition to service on all interested parties as shown on the attached Court Mailing Matrix and pursuant to the requirements of Rule 1014(b), to the Maryland Chapter 7 Trustee for Chance & Anthem, LLC, George W. Liebmann, Liebmann & Shively, P.A., 8 W. Hamilton Street, Baltimore, MD 21201 (and via email to Gliebmann@lspa.comcastbiz.net) and to The Office of the United States Trustee for the District of Maryland, 101 West Lombard Street, Suite 2625, Baltimore, MD 21201 with a courtesy copy via email to the Assistant U.S. Trustee, Hugh M. Bernstein, Esq. (hugh.m.bernstein@usdoj.gov) and to the Office of the U.S. Trustee for Region 21, Steven R. Turner and Heidi A. Feinman, Esq., 51 S.W. First Avenue, Room 1204, Miami, FL 33130 with courtesy email to Heidi A. Feinman, Esq. (Heidi.A.Feinman@usdoj.gov.).

By: /s/ Steven S. Newburgh
STEVEN S. NEWBURGH, ESQ.
Florida Bar No. 348619

## <u>SERVICE LIST</u>

**Mailing Information for Case 13-13096-PGH**

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- John C. Brock     jbrock@solomonlaw.com, bankruptcy@solomonlaw.com
- Robert P. Charbonneau     rpc@agentislaw.com, nsocorro@agentislaw.com;bankruptcy@agentislaw.com;bankruptcy.ecc@ecf.courtdrive.com
- Stephen P. Drobny     sdrobny@joneswalker.com, tsnow@joneswalker.com;jmaddox@joneswalker.com;rbruckmann@joneswalker.com;bturner@joneswalker.com;mvelapoldi@joneswalker.com
- Heidi A Feinman     Heidi.A.Feinman@usdoj.gov
- Jed L Frankel     jfrankel@eisingerlaw.com, sorta@eisingerlaw.com
- Daniel L. Gold     dgold@goldbergsegalla.com, mmartinez@goldbergsegalla.com
- Brian M Guertin     bk@exllegal.com, guertin.brian@yahoo.com
- Teresa M Hair     FloridaBKLegal@brockandscott.com, FLBKECF@brockandscott.com;WBECF@brockandscott.com
- Joshua T Hauserman     joshua@hlgflorida.com, jessica@hlgflorida.com
- Nicole Grimal Helmstetter     ngh@agentislaw.com, nsocorro@agentislaw.com;bankruptcy@agentislaw.com;ngh@ecf.inforuptcy.com
- Anthony Kang     Anthony.kang@saul.com
- Michael D Lessne     mlessne@broadandcassel.com, jphillips@broadandcassel.com
- Eugene R Martell     emartell@lenderlegal.com
- Orfelia M Mayor     omayor@ombankruptcy.com, legalservices@pbctax.com;carmen@ombankruptcy.com;cmbk@ombankruptcy.com;omayor@ecf.inforuptcy.com
- Brian K. McMahon     briankmcmahon@gmail.com, irizarryelise1@gmail.com
- David L. Merrill     dlmerrill@theassociates.com, zcastro@theassociates.com;trosa@theassociates.com;zrodriguez@theassociates.com
- Larry M Mesches     lmesches@kmjlawgroup.com, service@kmjlawgroup.com
- Steven S Newburgh     snewburgh@mclaughlinstern.com, ssn@newburghlaw.net;mgarcia@mclaughlinstern.com;bgonzalez@mclaughlinstern.com;vrhaburn@mclaughlinstern.com
- Office of the US Trustee     USTPRegion21.MM.ECF@usdoj.gov
- Robert M Peery     rpeery@sterneisenberg.com, rmarkpeeryesq@gmail.com
- Steven G. Powrozek     spowrozek@logs.com, electronicbankrupcynotices@logs.com
- Anila Rasul     arasul@shdlegalgroup.com, southerndistrict@shdlegalgroup.com
- Alexis S Read     alexis.read@dunnlawpa.com, nnayor@dunnlawpa.com
- Harry J Ross     hross@hjrlaw.com, jerri@hjrlaw.com
- Thomas E Rossin     ter@stjohnrossin.com, linda@stjohnrossin.com
- Jeffrey M Siskind     jeffsiskind@msn.com, jmsesq500@gmail.com
- Joseph B Towne     jtowne@lenderlegal.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service).

Michael Brown, Esq.
2620 Lake Shore Dr #100
Riviera Beach, FL 33404

CS Equities Inc
c/o William Siskind
Belize Place
Wellington, FL 33414

Sara Dozier
c/o Michael Brown Esq
2620 Lake Shore Dr #100
Riveria Beach, FL 33404

Miriam M. Siskind Trust
c/o William L. Siskind Trustee
8373 Belize Place
Wellington, FL 33414

OptimumBank
2477 E. Commercial Blvd
Fort Lauderdale, FL 33308

Recovery Management Systems Corp
25 SE 2 Ave #1120
Miami, FL 33131

William L. Siskind
3485 Lago De Talavera
Wellington, FL 33467

# Mailing Information for Case 18-11168

**Electronic Mail Notice List** - Parties in the case only

- Robert Grossbart    robert@grossbartlaw.com, debra@grossbartlaw.com
- George W. Liebmann    Gliebmann@lspa.comcastbiz.net, oshively@lspa.comcastbiz.net;MD25@ecfcbis.com;stifft@lspa.comcastbiz.net
- Steven S. Newburgh    snewburgh@mclaughlinstern.com, mgarcia@mclaughlinstern.com
- Orbie R. Shively    oshively@lspa.comcastbiz.net
- Jeffrey Marc Siskind    jeffsiskind@msn.com, jeffsiskind@gmail.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service).

> Steven S. Newburgh
> McLaughlin & Stern PLLC
> City Place Office Tower
> 525 Okeechobee Blvd, Suite 1700
> West Palm Beach, FL 33401

CFN 20150400929
OR BK 27898 PG 740
RECORDED 10/30/2015 12:41:31
Palm Beach County, Florida
AMT 1,250,000.00
DEED DOC 8,750.00
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 0740-0743; (4Pgs)

This instrument prepared by:
Lorie L. Lockerson
Fidelity National Title of Florida Inc.
500 Maplewood Drive, Suite 5
Jupiter, FL 33458

Return to:
Lorie Lockerson
Fidelity National Title of Florida Inc
500 Maplewood Dr, Ste 5
Jupiter, FL 33458

File No.: 2615-0275     $1,250,000 —

Parcel Identification No. 73-41-44-21-03-000-0020

## SPECIAL WARRANTY DEED

**THIS SPECIAL WARRANTY DEED** made this *August 25*, 2015, by **JPMorgan Chase Bank, National Association, a National Association**, and having its place of business at 3451 Vision Drive, Columbus, OH 43219, hereinafter called the "Grantor", to **CHANCE & ANTHEM, LLC, a Florida Limited Liability Company**, whose post office address is: 525 S. Flagler Drive, Ste. 501 West Palm Beach, FL 33401, hereinafter called the "Grantee".

**WITNESSETH**: That Grantor, for and in consideration of the sum of **$10.00** Dollars and other valuable considerations, receipt whereof is hereby acknowledged, by these presents does grant, bargain, sell unto Grantee, all that certain land situate in Palm Beach County, Florida, to wit:

**See Exhibit A attached hereto and made a part hereof.**

**TOGETHER** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**SUBJECT** to the matters set forth on Exhibit B attached hereto and made a part hereof (collectively, the "Permitted Exceptions"), provided this shall not serve to reimpose any of the same.

**GRANTOR WILL WARRANT** and forever defend the right and title to the above-described real property unto the Grantee against the claims of all person, claiming by, through or under Grantor, subject to the Permitted Exceptions. *(Wherever used herein the terms "Grantor" and "Grantee" included all the parties to this instrument, and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporation.)*

3445 Santa Barbara RJB

DB1/67148262.3

NRT DEED

EXHIBIT 1

CFN 20150400929
BOOK 27898 PAGE 741
2 OF 4

**IN WITNESS WHEREOF,** the Grantor has signed and sealed these presents the day and year first above written.

Signed, sealed and delivered in the presence of:

*Charles H. Rieper  25 Aug. 2015*
(Witness Signature)

Print Name: Charles H. Rieper

*Chauncia E. Anderson  8-25-15*
(Witness Signature)

Print Name: Chauncia E Anderson

JPMorgan Chase Bank, National Association,
a National Association

8-25-15

By: *Rebecca J. Bingham*
     Rebecca J Bingham
Its: Vice President

(Affix corporate seal)

STATE OF ____Ohio_____ )
                                      ) ss:
COUNTY OF __Franklin__ )

The foregoing instrument was acknowledged before me this 25 day of August, 20 15, by Rebecca J Bingham the Vice President of JPMorgan Chase Bank, National Association, a National Association, on behalf of said corporation. She/He:

X is personally known to me or
___ has produced _____ as identification.

NOTARY PUBLIC:

Sign: *Caitin Marquardt*
Print: Caitin Marquardt

My commission expires 08|10|2019      (Affix Notarial Stamp or Seal)

*3445 Santa Barbara  RJB*

DB1/67148262.3

CAITIN MARQUARDT
Notary Public, State of Ohio
My Commission Expires 08-10-2019

NRT DEED

CFN 2015040029
BOOK 27898 PAGE 742
3 OF 4



This is not a certified copy

**EXHIBIT A**

**LEGAL DESCRIPTION**

LOT 2 OF SOUTHFIELDS - PHASE I OF PALM BEACH POLO AND COUNTRY CLUB-WELLINGTON COUNTRY PLACE P.U.D., ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 39, PAGE 19, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

A/K/A 3443 SANTA BARBARA DR, WELLINGTON, FL 33414

DB1/67148262.3

NRT DEED

CFN 2015040029
BOOK 27898 PAGE 743
4 OF 4



## EXHIBIT B

### PERMITTED ENCUMBRANCES

1. The lien of taxes and assessments for the current year and subsequent years;

2. Matters that would be shown by an accurate survey and inspection of the property;

3. All covenants, restrictions, conditions, easements, reservations, rights-of-way, and other matters of record, to the extent valid, subsisting and enforceable;

4. Zoning requirements, statutes, rules, orders, restrictions, regulations and ordinances of governmental agencies or their instrumentalities relating to the property, the buildings located thereon, their construction and uses, in force on the date hereof (if any such exist); and

5. Any licenses, permits, authorizations or similar items (if any) in connection with the conduct of any activity upon the property.

*3445 Santa Barbara Rd*

DB1/67148262.3

NRT DEED

CFN 20150417806
OR BK 27926 PG 1809
RECORDED 11/13/2015 10:56:39
Palm Beach County, Florida
AMT 812,500.00
MTG DOC 2,843.75
INTANGIBLE 1,625.00
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 1809-1832; (24Pgs)

RECORD AND RETURN TO:

New Wave Loans Residential, LLC
1835 NE Miami Gardens Drive, Suite 451
North Miami Beach, Florida 33179

THIS INSTRUMENT PREPARED BY:
Staci J. Rutman, Esq.
Law Office of Staci J. Rutman P.A.
500 South Pointe Drive, Suite 230
Miami Beach, FL 33139

26-15-0589 A

[Space above line reserved for recording office use]

## MORTGAGE

**Balloon Mortgage -- This Mortgage has a Balloon Payment. The Balloon Payment will be due on December 1, 2018 in the amount of $812,500.00 plus accumulated interest.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **November 6, 2015,** together with all Riders to this document.
**(B) "Borrower"** is **Chance & Anthem LLC, a Florida limited liability company.** Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is **New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company.** Lender's address is 1835 NE Miami Gardens Drive, Suite 451, North Miami Beach, Florida 33179. Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated of even date herewith. The Note states that Borrower owes Lender **EIGHT HUNDRED TWELVE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($812,500.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2018.**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| X  Adjustable Rate Rider | ☐ Condominium Rider | ☐  Second Home Rider |
| ☐ Balloon Rider | X  Planned Unit Development Rider | ☐Other(s)-Service of Process |
| X  1-4 Family Rider | ☐  Biweekly Payment Rider | |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENTForm 3010   1/01  *(page 1 of 12pages)* NMLS# 994227

EXHIBIT 2

CFN 20150417806
BOOK 27926 PAGE 1810
2 OF 24

**(I)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K)** **"Escrow Items"** means those items that are described in Section 3.
**(L)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(P)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the County of **Palm Beach**:

**3445 Santa Barbara Drive, Wellington, FL 33414**
- See Exhibit "A" attached hereto for Legal Description.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010   1/01   *(page 2 of 12 pages)* NMLS# 994227

CFN 20150417806
BOOK 27926 PAGE 1811
3 OF 24

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010    1/01   *(page 3 of 12pages)* NMLS# 994227

CFN 20150417806
BOOK 27926 PAGE 1812
4 OF 24

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010   1/01  *(page 4 of 12 pages)* NMLS# 994227

CFN 20150417806
BOOK 27926 PAGE 1813
5 OF 24

Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not

CFN 20150417806
BOOK 27926 PAGE 1814
6 OF 24

have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010    1/01    *(page 6 of 12 pages)* NMLS# 994227

to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CFN 20150417806
BOOK 27926 PAGE 1816
8 OF 24

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower shall be served upon Borrower's appointed agent ("Borrower's Agent") as set forth in that certain Appointment of Agent dated of even date herewith ("Appointment of Agent"), in connection with this Security Instrument shall be deemed to have been given to Borrower's Agent when mailed by first class mail or when actually delivered to Borrower's Agent notice address as set forth in the Appointment of Agent, if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the address as set forth in the Appointment of Agent unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of change to the Borrower's Agent or the Borrower's Agent's address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENTForm 3010   1/01  *(page 8 of 12pages)* NMLS# 994227

must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

CFN 20150417806
BOOK 27926 PAGE 1818
10 OF 24

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.**

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010  1/01  *(page 10 of 12 pages)* NMLS# 994227

CFN 20150417806
BOOK 27926 PAGE 1819
11 OF 24

<u>Balloon Mortgage – This Mortgage has a Balloon Payment. The Balloon Payment will be due on December 1, 2018 in the amount of $812,500.00 plus accumulated interest.</u>

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered, in the presence of:

WITNESSES:                                          **BORROWER:**

Print name: __Nicole Hurst__                        **Chance & Anthem LLC, a Florida limited liability company**

Print name: __M. A. MCDANIEL__                      By: _____
                                                         Jeffrey M. Siskind, Managing Member

STATE OF FLORIDA

COUNTY OF __Palm Beach__

The foregoing instrument was acknowledged before me this __6th__ day of **November, 2015**, by **Jeffrey M. Siskind, Managing Member of Chance & Anthem LLC, a Florida limited liability company,** who is [ ] personally known to me or [✗] produced __FL DriversLicense__ as identification.

```
NOTARY PUBLIC
M A MCDANIEL
MY COMMISSION #FF042736
EXPIRES August 13, 2017
(407) 398-0153   FloridaNotaryService.com
```

My commission expires:

Name: __M. A. MCDANIEL__
Notary Public, State of __FL__
Commission No. __FF042736__

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010   1/01  *(page 11 of 12 pages)* NMLS# 994227

CFN 20150417806
BOOK 27926 PAGE 1820
12 OF 24

## EXHIBIT A

Lot 2, Southfields – Phase I of Palm Beach Polo and Country Club- Wellington Country Place – P.U.D., according to the map or plat thereof, as recorded in Plat Book 39, Page(s) 19 through 22, inclusive, of the Public Records of Palm Beach County, Florida.

Parcel ID# 11-41-44-21-03-000-0020

This is not a certified copy

CFN 20150417806
BOOK 27926 PAGE 1821
13 OF 24

### ADJUSTABLE RATE RIDER
### (1 Year Treasury Index -- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **6th** day of **November, 2015**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by **Chance & Anthem LLC, a Florida limited liability company** (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**3445 Santa Barbara Drive, Wellington, FL 33414**
[the "Property Address"]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **9.000%**. The Note provides for changes in the interest rate and the monthly payments as follows:

**INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The interest rate I will pay may change on the first day of **December 1, 2016** and on that day every 3rd month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 60 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **8.740 percentage points (8.740%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest 0.125%. Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **11.000%** or less than **9.000%**. Thereafter, my interest rate will never be increased on any single Change Date by more than two percentage points (**2.0%**) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **13.000%**.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

NMLS# 994227

CFN 20150417806
BOOK 27926 PAGE 1822
14 OF 24

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines in its sole discretion that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

BORROWER:

**Chance & Anthem LLC, a Florida limited liability company**

By:_____

   **Jeffrey M. Siskind, Managing Member**

NMLS# 994227

CFN 20150417806
BOOK 27926 PAGE 1823
15 OF 24

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 6**th** day of **November, 2015**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**3445 Santa Barbara Drive, Wellington, FL 33414**
[the "Property Address"]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170   1/01 *(page 1 of 2 pages)*

CFN 20150417806
BOOK 27926 PAGE 1824
16 OF 24

applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

Chance & Anthem LLC, a Florida limited liability company                    -Borrower

By:

Jeffrey M. Siskind, Managing Member

Certified Copy

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3170   1/01 *(page 2 of 2 pages)*

CFN 20150417806
BOOK 27926 PAGE 1825
17 OF 24

## PLANNED UNIT DEVELOPMENT RIDER

**THIS PLANNED UNIT DEVELOPMENT RIDER** is made this **6**th day of **November, 2015**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**3445 Santa Barbara Drive, Wellington, FL 33414**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of **Palm Beach** County.    (the "Declaration").

The Property is a part of a planned unit development know
**SOUTHFIELDS PALM BEACH POLO and COUNTRY CLUB HOMEOWNERS ASSOCIATION, INC.**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

CFN 20150417806
BOOK 27926 PAGE 1826
18 OF 24

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

**Chance & Anthem LLC, a Florida limited liability company**

By:_____

   Jeffrey M. Siskind, Managing Member

Certified copy

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01 *(page 2 of 2 pages)*
NMLS# 994227

## PLANNED UNIT DEVELOPMENT RIDER

**THIS PLANNED UNIT DEVELOPMENT RIDER** is made this **6th** day of **November, 2015,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of **Palm Beach** County. (the "Declaration").

The Property is a part of a planned unit development know
**PALM BEACH POLO and COUNTRY CLUB PROPERTY OWNERS ASSOCIATION, INC.**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

CFN 20150417806
BOOK 27926 PAGE 1828
20 OF 24

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

**Chance & Anthem LLC, a Florida limited liability company**

By:_____

    Jeffrey M. Siskind, Managing Member

Certified copy

**MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3150 1/01 *(page 2 of 2 pages)*
NMLS# 994227

CFN 20150417806
BOOK 27926 PAGE 1829
21 OF 24

### PLANNED UNIT DEVELOPMENT RIDER

**THIS PLANNED UNIT DEVELOPMENT RIDER** is made this **6**[th] day of **November, 2015,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **New Wave Loans Residential, LLC (Series: Siskind),** a **Delaware limited liability company** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**3445 Santa Barbara Drive, Wellington, FL 33414**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of **Palm Beach** County.  (the "Declaration").

The Property is a part of a planned unit development know
**WELLINGTON COUNTRYPLACE PROPERTY OWNERS ASSOCIATION, INC.**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

CFN 20150417806
BOOK 27926 PAGE 1830
22 OF 24

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

**Chance & Anthem LLC, a Florida limited liability company**

By:_____
    Jeffrey M. Siskind, Managing Member

Certified copy

**MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01** *(page 2 of 2 pages)*
**NMLS# 994227**

CFN 20150417806
BOOK 27926 PAGE 1831
23 OF 24

## PLANNED UNIT DEVELOPMENT RIDER

**THIS PLANNED UNIT DEVELOPMENT RIDER** is made this **6**[th] day of **November, 2015,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**3445 Santa Barbara Drive, Wellington, FL 33414**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of **Palm Beach** County.   (the "Declaration").

The Property is a part of a planned unit development know
**SECOND WELLINGTON INC.**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

CFN 20150417806
BOOK 27926 PAGE 1832
24 OF 24

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

**Chance & Anthem LLC, a Florida limited liability company**

By:_____

   Jeffrey M. Siskind, Managing Member

Certified copy

**MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3150 1/01 *(page 2 of 2 pages)*
NMLS# 994227

CFN 20160107006
OR BK 28193 PG 103
RECORDED 03/30/2016 11:27:28
Palm Beach County, Florida
AMT 500,000.00
MTG DOC 1,750.00
INTANGIBLE 1,000.00
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 0103-0110; (8Pgs)



# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on this 23rd day of MARCH, 2016. The Mortgagor is Chance & Anthem, LLC, a Florida Limited Liability Company, with power and authority to protect, conserve, sell, lease encumber and otherwise manage and dispose of the property described herein, ("Borrower"). This Security Instrument is given to ABK South Properties, LLC, a Florida Limited Liability Company, whose mailing address is 15 Fisher Lane, Suite 200, White Plains, NY 10605 ("Lender").

BORROWER owes Lender the principal sum of FIVE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($500,000.00).

This debt is evidenced by Borrower's Balloon Promissory Note dated the same date as this Security Instrument ("Note"), which provides for consecutive interest only monthly payments due the 23rd of each month hereafter beginning April 23, 2016, toward the full debt, if not paid earlier. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Palm Beach County, Florida:

3345 Santa Barbara Drive, Wellington, FL 33414
See Exhibit A attached hereto for Legal Description

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of records.

This SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Borrower shall provide the Lender with written proof of payment of insurance and real estate taxes within thirty (30) days of their respective due dates and in the default of same and subject to applicable law or to a further written waiver by Lender, Borrower may be required to pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items". Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

Page 1 of 7


EXHIBIT 3

CFN 20160107006
BOOK 28193 PAGE 104
2 OF 8



The funds shall be held in an institution, the deposits or accounts of which are insured or guaranteed by a Federal or State agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied; first, to late charges due under the Note; second, to interest under the note, and last to principal due.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a

CFN 20160107006
BOOK 28193 PAGE 105
3 OF 8



standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property or does not answer within thirty (30) days, a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation, Maintenance and Protection of Property; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Rents.** The rents and profits of the mortgaged property also are mortgaged hereby and, if proceedings to foreclose this mortgage shall be instituted, the court having jurisdiction should appoint a receiver of the mortgaged property and apply those rents and profits to the indebtedness hereby secured, regardless of the solvency of the Mortgagor or the adequacy of the security.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the

CFN 20160107006
BOOK 28193 PAGE 106
4 OF 8



Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the property immediately before the taking is less than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to borrower. If a refund reduces principal, the

CFN 20160107006
BOOK 28193 PAGE 107
5 OF 8

reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by overnight delivery or certified mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the State of Florida the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument, If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) Five days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower; (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including but not limited to reasonable attorneys' fees and costs; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of note.** The Note or a partial interest in the Note (together with this Security Instrument may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the Loan Service") that collects monthly payments due under the Note and this Security Instrument. If there is a change of the Loan Service, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Service and the address to which future payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal,

This is your...

CFN 20160107006
BOOK 28193 PAGE 108
6 OF 8



storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other rededication of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

21 **Acceleration; Remedies.** Lender shall give notice to Borrower by certified mail prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, no less than thirty (30) days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph, including, but not limited to, reasonable attorney's fees and costs of title evidence.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lenders shall release this Security Instrument without charge to Borrower. Borrower shall pay any recondition costs.

23. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include attorneys' fees awarded by an appellate court.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable line(s)]

25. **Balloon Mortgage.** This Mortgage has a Balloon Payment. The Balloon Payment will be due on March 18, 2017 in the amount of $500,000.00 plus accumulated interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, Sealed and Delivered in the Presence of:

WITNESSES:

Print Name: WILLIE RUSSELL

Print Name: ROBERT GIBSON

BORROWER:

Chance & Anthem LLC, a Florida Limited Liability Company

By: _____
Jeffrey M. Siskind, Managing Member

STATE OF FLORIDA, COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this 23rd day of March 2016, by Jeffrey M. Siskind, Managing Member of Chance & Anthem, LLC, a Florida Limited Liability Company, who is personally known to me or who has produced PERSONALLY KNOWN for identification.

WITNESS my hand and official seal in the County and State last aforesaid this 23rd day of March, 2016.

_____
Notary Signature            (SEAL)
Print Name:
My commission expires 12-29-18

BART F. CASO
MY COMMISSION # FF 183791
EXPIRES: December 29, 2018
Bonded Thru Budget Notary Services

Record and Return to:
This instrument was prepared by:

This is not a copy

Page 7 of 7

CFN 20160107006
BOOK 28193 PAGE 110
8 OF 8



# Exhibit A

Lot 2, Southfields - Phase 1 of Palm Beach Polo and Country Club - Wellington Country Place P.U.D., according to the Plat thereof, recorded in Plat Book 39, Pages 19 through 22, of the Public Records of Palm Beach County, Florida.

Parcel Identification Number: 73-41-44-21-03-000-0020

DoubleTime®

CFN 20170076208

OR BK 28927 PG 1078
RECORDED 03/06/2017 09:18:28
Palm Beach County, Florida
Sharon R. Bock,CLERK & COMPTROLLER
Pgs 1078 - 1079; (2pgs)

This document prepared by and return to:
Keith D. Diamond, Esquire
Keith D. Diamond, P.A.
3440 Hollywood Blvd., Suite 415
Hollywood, Florida 33021
Tel: (954) 618-1007

## ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

FOR VALUE RECEIVED, **New Wave Lenders (2015-B), LP,** a Delaware limited partnership ("Assignor"), whose address is 1835 NE Miami Gardens Drive, Suite 451, North Miami Beach, Florida 33179, does hereby grant, sell, assign, transfer and convey, unto **Wellington 3445, LP,** a Florida limited partnership ("Assignee"), all right, title and interest of Assignor in and to the following instruments encumbering the real property legally described as follows:

**Lot 2, Southfields - Phase I of Palm Beach Polo and County Club- Wellington Country Place P.U.D., according to the map or plat thereof, as recorded in Plat Book 39, Pages 19 through 22, inclusive, of the Public Records of Palm Beach County, Florida.**

**Parcel ID# 73-41-44-21-03-000-0020**

1. Mortgage dated November 6, 2015 made and executed by **Chance & Anthem LLC,** a Florida limited liability company, to and in favor of **New Wave Loans Residential LLC (Series: Siskind),** a Florida limited liability company, in the original principal sum of Eight Hundred Twelve Thousand Five Hundred Dollars and Zero Cents ($812,500.00) and recorded in Official Records Book 27926, Page 1809, of the Public Records of Palm Beach County, Florida.

2. Assignment of Rents, Leases and Profits dated November 6, 2015 made and executed by **Chance & Anthem LLC,** a Florida limited liability company, to and in favor of **New Wave Loans Residential LLC (Series: Siskind),** a Florida limited liability company, and recorded in Official Records Book 27926, Page 1833, of the Public Records of Palm Beach County, Florida.

The aforementioned Mortgage and Assignment of Rents, Leases and Profits were assigned, transferred and conveyed by **New Wave Loans Residential LLC (Series: Siskind),** a Florida limited liability company, to Assignor by that Assignment of Mortgage and Other Loan Documents effective as of November 13, 2015 and recorded in Official Records Book 28011, Page 1154, of the Public Records of Palm Beach County, Florida.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever.

This Assignment is made without recourse to, or any representation or warranty by, Assignor in any event whatsoever.

EXHIBIT 4

Book28927/Page1079
CFN#20170076208
Page 2 of 2

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed, sealed and delivered this _22_ day of February, 2017.

**WITNESSES:**

Print Name: _Kei M Diamed_

Print Name: _Richard E Douglas_

STATE OF FLORIDA )
COUNTY OF MIAMI-DADE )

**ASSIGNOR:**

New Wave Lenders (2015-B), LP, a Delaware limited partnership

By: Rivo Alto Capital Funding, LLC, a Florida limited liability company, General Partner

By: _____
Joel Eidelstein, Manager

The foregoing instrument was acknowledged before me this 22nd day of February, 2017 by Joel Eidelstein, as Manager of Rivo Alto Capital Funding, LLC, a Florida limited liability company, the General Partner of New Wave Lenders (2015-B), LP, a Delaware limited partnership, [ ✓ who is personally known to me or [ ] who produced _____ as identification.

NOTARY PUBLIC, STATE OF FLORIDA

My commission expires:

SUSANA A DIAZ
MY COMMISSION #FF173128
EXPIRES October 30, 2018
(407) 398-01.. FloridaNotaryService.com

SUSANA A DIAZ
MY COMMISSION #FF173128
EXPIRES October 30, 2018
(407) 398-0153    FloridaNotaryService.com

Page -2-

# Certificate of Limited Partnership

A17000000078
FILED
February 16, 2017
Sec. Of State
ncausseaux

Name of Limited Partnership:

WELLINGTON 3445, LP

Street Address of Limited Partnership:

375 GOLFSIDE DRIVE
WEXFORD, PA.   15090

Mailing Address of Limited Partnership:

375 GOLFSIDE DRIVE
WEXFORD, PA.   15090

The name and Florida street address of the registered agent is:

JEFFREY M SISKIND
525 S. FLAGLER DRIVE
#500
WEST PALM BEACH, FL.   33401

I certify that I am familiar with and accept the responsibilities of
registered agent.

Registered Agent Signature:   JEFFREY SISKIND

The name and address of all general partners are:

Title:   G
ZOKAITES CONTRACTING FL LLC
375 GOLFSIDE DRIVE
WEXFORD, PA.   15090

Signed this Sixteenth day of February, 2017

I (we) declare the I (we) have read the foregoing and know the contents thereof
and that the facts stated herein are true and correct.

General Partner Signature: FRANK ZOKAITES

The individual(s) signing this document affirm(s) that the facts stated herein are true and
the individual(s) is/are aware that false information submitted in a document to the
Department of State constitutes a third degree felony as provided for in s.817.155, F.S.

EXHIBIT 5

# Electronic Articles of Organization
## For
## Florida Limited Liability Company

L17000034189
FILED 8:00 AM
February 13, 2017
Sec. Of State
nculligan

## Article I

The name of the Limited Liability Company is:

ZOKAITES CONTRACTING FL. LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

375 GOLFSIDE DRIVE
WEXFORD, PA. 15090

The mailing address of the Limited Liability Company is:

375 GOLFSIDE DRIVE
WEXFORD, PA. 15090

## Article III

The name and Florida street address of the registered agent is:

JEFFREY M SISKIND ESQ.
525 SOUTH FLAGLER
SUITE 500
WEST PALM BEACH, FL. 33401

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature: JEFFREY SISKIND /SS/


EXHIBIT 6

## Article IV

The name and address of person(s) authorized to manage LLC:

Title: MGR
FRANK R ZOKAITES
375 GOLFSIDE DRIVE
WEXFORD, PA. 15090

Signature of member or an authorized representative

Electronic Signature: FRANK ZOKAITES

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true. I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

L17000034189
FILED 8:00 AM
February 13, 2017
Sec. Of State
nculligan

CFN 20170175783
BOOK 29091 PAGE 190
2 OF 5

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.:50-2016-CA-012543-XXXX-MB

WELLINGTON 3445, LP, a Florida limited partnership,

      Plaintiff,

v.

CHANCE & ANTHEM, LLC., a Florida limited liability
company, JEFFREY M. SISKIND, ABK SOUTH
PROPERTIES, LLC., a Florida limited liability company,
3GEN VC, LLC. a Florida limited liability company, N & P
CONSTRUCTION AND DEVELOPMENT, INC., a Florida
corporation, PTM ELECTRIC, INC., a Florida corporation,
and DAVID FIORE,

      Defendants.

_____/

## FINAL JUDGMENT OF FORECLOSURE

**THIS ACTION** was heard before the Court on Friday, May 12, 2017 on Plaintiff
WELLINGTON 3445, LP's Motion for Summary Judgment of Foreclosure. The Court, having
reviewed the Motion for Summary Judgment of Foreclosure and the affidavits filed in support
thereof, having determined that Defaults have been entered against Defendants 3GEN VC, LLC and
PTM ELECTRIC, INC. due to their failure to file or serve any pleading or document as required by
law, having heard argument of counsel and being otherwise duly advised in the premises,

**IT IS ORDERED AND ADJUDGED** that Final Judgment of Foreclosure is hereby
**GRANTED** in favor of Plaintiff WELLINGTON 3445, LP and against Defendants CHANCE &
ANTHEM, LLC, JEFFREY M. SISKIND, ABK SOUTH PROPERTIES, LLC, 3GEN VC, LLC,
N&P CONSTRUCTION DEVELOPMENT, INC., PTM ELECTRIC, INC. and DAVID FIORE.

1.     **Amounts Due and Owing.** There is due and owing by Defendants CHANCE &
ANTHEM, LLC, whose last known address is 525 S. Flagler Drive, Suite 501, West Palm Beach,
FL 33401, and JEFFREY M. SISKIND, whose last known address is 525 S. Flagler Drive, Suite 500,
West Palm Beach, FL 33401, jointly and severally, to Plaintiff WELLINGTON 3445, LP, whose
address is 375 Golfside Drive, Wexford, PA 15090, the following:

| | |
|---|---|
| Principal due on the Note and Mortgage being foreclosed | $   812,500.00 |
| Interest on the Note and Mortgage through May 12, 2017 | $   175,854.00 |
| Late Fees | $     6,844.96 |

EXHIBIT 7

Page -2-

| | | |
|---|---|---|
| Advances to C&S Expertise and Southfields of Palm Beach HOA | $ | 5,893.42 |
| Payments to Receiver Marcus Buerosse | $ | 3,974.00 |
| Owner's-placed insurance | $ | 4,244.80 |
| Builder's risk insurance | $ | 1,500.00 |
| Court Costs, Now Taxed: | | |
| Filing fee | $ | 2,044.75 |
| Service of process fees | $ | 394.00 |
| Summons for Clerk issuance | $ | 10.50 |
| Reproduction costs for exhibits/blow-ups | $ | 539.65 |
| Foreclosure/title report | $ | 250.00 |
| **SUBTOTAL** | $ 1,014,050.08 | |
| Attorneys' fees | $ | 29,300.00 |
| **GRAND TOTAL** | **$ 1,043,350.08** | |

2.     **Interest.** The Grand Total amount referenced in Paragraph 1 shall bear interest from this date forward at 25.00% per year, the Default Rate of interest per the subject Interest-Only Period Adjustable Rate Note ($714.62 per day), which provides that Default Rate interest shall apply until any judgment thereon is paid in full.

3.     **Lien on Property.** Plaintiff WELLINGTON 3445, LP holds a lien for the Grand Total sum specified in Paragraph 1 herein. The lien of Plaintiff WELLINGTON 3445, LP is superior in dignity to any right, title, interest or claim of the Defendants and all persons, corporation, or other entities claiming by, through, or under the Defendants, or any of them, and the following-described property (the "Property") located in Palm Beach County, Florida and legally described as follows:

Lot 2, Southfields - Phase I of Palm Beach Polo and County Club - Wellington Country Place - P.U.D., according to the map or plat thereof, as recorded in Plat Book 39, Pages 19 through 22, inclusive, of the Public Records of Palm Beach County, Florida.

Parcel ID# 73-41-44-21-03-000-0020

4.     **Sale of Property.** If the Grand Total sum specified in Paragraph 1 herein, with interest at the rate described in Paragraph 2 herein and all costs accrued subsequent to this Judgment are not paid, the Clerk of this Court shall sell the Property at public sale to the highest bidder for

Page -3-

cash. The Clerk of the Courts shall conduct the sale online at www.mypalmbeachclerk.clerkauction.com commencing at 10:00 A.M. ET on ~~June~~ 12 , 2017. The foreclosure sale can only be canceled by court order.

5.   **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the Property for sale, provided, however, that the purchaser of the Property for sale shall be responsible for documentary stamps payable on the Certificate of Title. If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the Grand Total sum with interest and costs accruing subsequent to this Judgment, or such part of it, as is necessary to pay the bid in full.

6.   **Distribution of Proceeds.** On filing of the Certificate of Title the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the Certificate; third, Plaintiff's attorneys' fees; fourth, the Grand Total sum due to Plaintiff, less the items paid, plus interest at the rate prescribed in Paragraph 2 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

7.   **Right of Redemption/Right of Possession.** Upon filing of the Certificate of Sale, Defendant(s) and all persons claiming under or against Defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the Property, except as to claims or rights under Section 45.01315, Florida Statutes (2013) shall be terminated, except as to claims or rights under Chapter 718 or Chapter 720, Florida Statutes, if any. Upon filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the Property, subject to tenant protections in compliance with the provisions of Section 83.561, Florida Statutes (2015).

8.   **Attorneys' Fees.** The Court finds, based upon the affidavits/testimony presented and upon reasonable inquiry of counsel for Plaintiff, that 73.25 hours were reasonably expended by Plaintiff's counsel, Keith D. Diamond. Plaintiff's counsel represents that the attorneys' fee awarded does not exceed its contract fee with Plaintiff. The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla. 1985).

9.   **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper including, without limitation, writs of possession and deficiency judgments.

Only after issuance of the Certificate of Title and following separate order of the Court will the Clerk and Comptroller be authorized to issue a writ of possession for the premises and the Sheriff is authorized to serve the writ of possession.

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.**

Page -4-

YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 205 N. DIXIE HIGHWAY, WEST PALM BEACH, FL 33401 (TELEPHONE. (561) 355-2996), WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., 423 FERN STREET #200, WEST PALM BEACH, FL 33401 (TELEPHONE: (561) 655-8944), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC., YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

ORDERED at West Palm Beach, Palm Beach County, Florida, this 12 day of May, 2017.

_____
CIRCUIT COURT JUDGE

Plaintiff shall serve all Defendants

4020CT

CFN 20170240427

OR BK 29198 PG 0259
RECORDED 07/05/2017 15:18:51
AMT 1,000,100.00
Doc Stamp 7,000.70
Palm Beach County, Florida
Sharon R. Bock,CLERK & COMPTROLLER
Pg 0259; (1pg)

IN THE CIRCUIT COURT OF THE JUDICIAL
CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 2016CA012543

NEW WAVE LENDERS 2015 B LP
Plaintiff (s) / Petitioner (s)
vs.

CHANCE & ANTHEM LLC; JEFFREY M SISKIND; ABK SOUTH PROPERTIES LLC;3GEN VC LLC; N & P CONSTRUCTION AND
DEVELOPMENT INC; FLM ELECTRIC INC;DAVID FIORE
Defendant (s) / Respondent (s)

CERTIFICATE OF TITLE
Chapter 45

THE UNDERSIGNED CLERK OF this Court Certifies that a Certificate of Sale was executed and filed in this action
on June 12, 2017 for the property described herein and that objections to the sale have either not been filed within the time
allowed by statutory law or, if filed, have been heard by the court. The property in Palm Beach County, Florida is described as
follows:

Lot 2, Southfields - Phase I of Palm Beach Polo and County Club- Wellington Country Place - P.U.D., according to the map or plat thereof,
as recorded in Plat Book 39, Pages 19 through 28, inclusive, of the Public Records of Palm Beach County, Florida

was sold to:

WELLINGTON 3445 LP, A FLORIDA LIMITED PARTNERSHIP
375 GOLFSIDE DRIVE
WEXFORD, PA 15090



WITNESS my hand and seal of this Court on _____ JUL 05 2017 _____

Sharon R. Bock, a Deputy Clerk for Clerk and Comptroller

By: _____
Deputy Clerk

Duncan J. MacDonald

$1,000,100.00
7,000.70

FILED

2017 JUL -5 AM 11:28

SHARON R. BOCK, CLERK
PALM BEACH COUNTY, FL
CIRCUIT CIVIL

EXHIBIT 8

Prepared by and return to:
Jeffrey M. Siskind, Esquire
525 S. Flagler Drive, Ste. 500
West Palm Beach, FL 33401



CFN 20160337615

OR BK 28587 PG 0378
RECORDED 09/21/2016 09:28:42
Palm Beach County, Florida
Sharon R. Bock,CLERK & COMPTROLLER
Pgs 0378 - 379; (2pgs)

## ASSIGNMENT OF MORTGAGE

George A. Maler, a married man, with an address of 12509 World Cup Lane, Wellington, Florida 39414 ("Assignor"), is the holder of a certain mortgage dated December 2, 2013, and executed by Imtiaz Mohammed and Zoreeda Mohammed, husband and wife, as mortgagor(s).

This mortgage was recorded among the official records of Palm Beach County, Florida on December 5, 2013, in record book 26485 at page 760, and secures a note or other obligation of the mortgagor to the Assignor in the original principal sum of $25,000.00 to real property described as follows; Condominium Unit No. B-6 of Cross Creek, a Condominium, according to the Declaration thereof recorded in Official Record Book 3262, Page 1812 of the Public Records of Palm Beach County, Florida.

Assignor has assigned this mortgage and obligation to Chance & Anthem, LLC, a Florida limited liability company, with an address of 525 South Flagler Drive, Ste. 500, West Palm Beach, FL 33401 ("Assignee").

Therefore, in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Assignee, the receipt of which is acknowledged, Assignor hereby assigns, transfers and sets over to Assignee all right, title and interest of Assignor in and to the above mortgage, together with the note or other obligation described therein and all moneys due and to become due thereon.

To have and to hold the same to the Assignee and the Assignee's heirs, successors and assigns forever.

And Assignor does hereby appoint Assignee its attorney in fact, in Assignor's name but at Assignee's sole expense, to take all proper means to recover the above indebtedness, and upon payment to release and discharge the mortgage as fully as Assignor could do had this Assignment not been made.

Assignor covenants with Assignee that there is now owing on such mortgage the principal sum of $25,750.00 with interest at Six Percent (6%) percent per annum, and that Assignor has good right to assign the same to Assignee.

IN WITNESS WHEREOF, This Assignment of Mortgage is executed on December 2, 2015.

Executed in the presence of:

_____
Witness

_Bart J. Caso_
Witness

_George A. Maler_

EXHIBIT 9

Book28587/Page379
CFN#20160337615
Page 2 of 2

STATE OF FLORIDA

COUNTY OF PALM BEACH

Before me, a Notary Public in and for the above state and county, personally appeared George A. Maler, known to me or proved to be the person named herein and who executed the foregoing instrument, and such person acknowledged that he executed said instrument for the purposes therein contained as his or her free and voluntary act and deed after being duly sworn.

(SEAL)

Bart J. Caso

NOTARY PUBLIC – STATE OF FLORIDA

My Commission Expires: _____

BART F. CASO
MY COMMISSION # FF 183791
EXPIRES: December 29, 2018
Bonded Thru Budget Notary Services

Filing # 59908461 E-Filed 08/03/2017 01:47:28 PM

CFN 20170284518
OR BK 29273 PG 715
RECORDED 08/07/2017 11:14:01
Palm Beach County, Florida
AMT
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 0715-0716; (2Pgs)

IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CHANCE & ANTHEM, LLC, a Florida
limited liability company, 525 S. Flagler
Drive, Ste. 500, West Palm Beach, FL
33401,

        Plaintiff,

vs.                             CASE NO. _____

IMITIAZ MOHAMMED and ZOREEDA
MOHAMMAD, husband and wife, 5313
Colbright Road, Lake Worth, FL 33467,
CROSS CREEK CONDOMINIUM
ASSOCIATION INC., 1500 N. Congress
Avenue, West Palm Beach, FL 33401, by
its Registered Agent, Ricker, Krivock and
Stoloff, 1818 Australian Avenue South #400,
West Palm Beach, FL 33409, and CLIFFORD
GRAHAM, 1500 N. Congress Avenue, Unit B-6,
West Palm Beach, FL 33401, and unknown
parties in possession.

        Defendant(s).
_____/

## NOTICE OF LIS PENDENS

TO:    THE ABOVE NAMED DEFENDANT(S) AND ALL OTHERS WHOM IT
MAY CONCERN:

**YOU ARE HEREBY NOTIFIED** that suit was instituted by the above-named
Plaintiff against the above-named Defendant(s), in the above styled cause, involving the
following described property, situated, lying and being in Palm Beach County, Florida,
to-wit:

Condominium Unit No. B-6 of Cross Creek, a Condominium, according to the
Declaration thereof recorded in Official Record Book 3262, Page 1812, of the Public
Records of Palm Beach County, Florida.

Relief sought as to such property is for foreclosure of a mortgage held by Plaintiff
against the premises, which Mortgage was recorded in Official Record Book 26485, Page
760, by Assignment of Mortgage to Plaintiff recorded in Official Record Book 28587,
Page 378, of the Public Records of Palm Beach County, Florida.

You will, therefore, please govern yourselves accordingly.

*EXHIBIT 10*

CFN 20170284518
BOOK 29273 PAGE 716
2 OF 2

Dated: August 1, 2017

SISKIND LEGAL GROUP

By: _____
Jeffrey M. Siskind, Esquire
FBN 138746
525 South Flagler Drive, Suite 500
West Palm Beach, FL 33401
TEL    (561) 791-9565
FAX    (561) 791-9581
jeffsiskind@msn.com

This is not a certified copy

CFN 20170358667

OR BK 29395 PG 1164
RECORDED 10/12/2017 10:49:23
Palm Beach County, Florida
Sharon R. Bock,CLERK & COMPTROLLER
Pg 1164; (1pg)

Prepared by:
Jeffrey M. Siskind, Esquire
3465 Santa Barbara Drive
Wellington, FL 33401

Return To:
Zokaites Properties, LP
375 Golfside Road
Wexford, PA 15090

### ASSIGNMENT OF MORTGAGE

KNOW ALL persons by these presents, that Chance & Anthem, LLC ("Assignor"), with a mailing address of 525 S. Flagler Drive, Ste. 500, West Palm Beach, FL 33401, does hereby grant, bargain, sell, assign, transfer, and set over to Zokaites Properties, LP, with a mailing address of 375 Golfside Road, Wexford, PA 15090, and its successors and assigns, all interest under that certain mortgage to George A. Maler from Imtiaz and Zoreeda Mohammed, dated December 2, 2013 and recorded December 5, 2013 in Official Record Book 26485, at Page 760, which mortgage was subsequently assigned to Assignor by Assignment of Mortgage dated December 2, 2015 and recorded September 21, 2016 in Official Record Book 28587, at Page 378.

IN WITNESS WHEREOF, the Assignor has duly executed this instrument this 12th day of October, 2017.

Signed, Sealed and Delivered
in the Presence of:

Print: _____
Witness

Print: Lorette Rosseno
Witness

CHANCE & ANTHEM, LLC

By: _____
Jeffrey M. Siskind
Managing Member

State of Florida

County of Palm Beach

On this 12th day of October, 2017, personally appeared Jeffrey M. Siskind, who is known to me to be the person who executed the foregoing instrument as Managing Member of Chance & Anthem, LLC, and acknowledged the same to be the free act and deed of said limited liability company, before me.

(SEAL)

EVETTE S. BILBO
Public - State of Florida
Comm. Expires Nov 1, 2017
Commission # FF 037108
Bonded Through National Notary Assn.

Notary Public – State of Florida

EVETTE S. BILBO
Notary Public - State of Florida
My Comm. Expires Nov 1, 2017
Commission # FF 037108
Bonded Through National Notary Assn.

EXHIBIT 11

Label Matrix for local noticing
113C-9
Case 13-13096-PGH
Southern District of Florida
West Palm Beach
Fri Mar 30 16:56:20 EDT 2018

3485 Lago De Talavera Trust
c/o Sofiye Williams, Esq.
500 E. Broward Blvd.
Suite 1710
Fort Lauderdale, FL 33394-3012

AXYS TCF, LLC
c/o Axys Capital Management
1613 S. Capital of Texas Hwy
Suite 300
Austin, TX 78746-6558

Belmar Winds Inc
c/o William Anderson, Esquire
101 NE Third Avenue, Ste. 1500
Fort Lauderdale, FL 33301-1181

CS Equities Inc
c/o William Siskind
Belize Place
Wellington, FL 33414

Christiana Trust
1610 East St. Andrew Pl #B150
Santa Ana, CA 92705-4931

Christiana Trust
Rushmore Loan Management Services LLC
15480 Laguna Canyon Rd
Irvine, CA 92618-2132

Fiore at the Gardens Condominium Association
c/o St. John Rossin Podesta Burr & Lemme
Centurion Tower, Suite 700
1601 Forum Place
West Palm Beach, FL 33401-8101

JPMorgan Chase Bank N.A
c/o Steve Powrozek
4630 Woodland Corporate Blvd #100
Tampa, FL 33614-2429

JPMorgan Chase Bank, N.A.
GrayRobinson, P.A.
c/o Michael D. Lessne, Esq.
401 E. Las Olas Blvd., Suite 1000
Fort Lauderdale, FL 33301-4210

McLaughlin & Stern PLLC
525 Okeechobee Blvd., Suite 1700
West Palm Beach, FL 33401-6327

Miriam M. Siskind Trust
c/o William L. Siskind Trustee
8373 Belize Place
Wellington, FL 33414

OB Real Estate Holdings 1732, LLC
c/o Joshua Hauserman
Hauserman Law Group, PLLC
1771 S. Congress Ave.
Suite 7
West Palm Beach, FL 33406-6606

Ocean Reef Community Association, Inc.
Eisinger, Brown, Lewis & Frankel, P.A.
Jed L. Frankel, Esq.
4000 Hollywood Boulevard
Suite 265-S
Hollywood, FL 33021-6782

OptimumBank
2477 E. Commercial Blvd
Fort Lauderdale, FL 33308-4041

Palm Beach County Tax Collector
c/o James M. Brako, Esq.
P. O. Box 3715
West Palm Beach, FL 33402-3715

Recovery Management Systems Corp
25 SE 2 Ave #1120
Miami, FL 33131-1605

Trisun Financial Group, LLC
c/o Larry Mesches, Esq.
2855 PGA Blvd., Suite 100
Palm Beach Gardens, FL 33410-2910

U.S. Bank National Association
c/o Solomon Law Group
1881 W. Kennedy Blvd
Tampa, Fl 33606-1611

US BANK, N.A., et al
PO BOX 19519
FORT LAUDERDALE, FL 33318-0519

World Springs 888 International, LLC
Blaxberg, Grayson & Kukoff, P.A.
25 SE Second Ave, Suite 730
Miami, FL 33131-1696

3485 Lago De Talavera Trust
c/o Steven S. Newburgh, Esq.
McLaughlin & Stern PLLC
CityPlace Office Tower - Suite 1700
525 Okeechobee Blvd.
West Palm Beach, FL 33401-6349

AT&T
PO Box 5014
Carol Stream, IL  60197-5014

Bank of America, N.A.
c/o Brittany Gramsky, Esquire
Albertelli Law
P.O. Box 23028
Tampa, FL 33623-2028

BankUnited, FSB
c/o Thomas Crowder, Esquire
Kahane & Assocaites, P.A.
8201 Peters Road, Ste. 3000
Plantation, FL 33324-3292

Belmar Winds Inc
c/o William J. Anderson PA
101 NE Third Ave #1500
Ft Lauderdale FL 33301-1181

Bengel Trust
c/o William L. Siskind
3485 Lago De Talavera
Wellington FL 33467-1071

Brown & Associates, P.A.
c/o Michael Brown, Esquire
620 Lake Shore Dr
Riviera Beach, FL  33404

CS Equities Inc
c/o William Siskind
3485 Lago De Talavera
Wellington FL 33467-1071

Christiana Trust, Div. Wilmington Sav. Fund
Tr. Stanwich Mortg. Loan Trust, 2012-19
c/o Rushmore Loan Management Services
P.O. Box 55004
Irvine, CA 92619-5004

Christiana Trust, Div. Wilmington Sav. Fund
c/o Rushmore Loan Management Services
P.O. Box 55004
Irvine, CA 92619-5004

Christopher George
c/o Steven S. Newburgh, Esq.
McLaughlin & Stern PLLC
CityPlace Office Tower - Suite 1700
525 Okeechobee Blvd.
West Palm Beach, FL 33401-6349

David Fiore
c/o Steven S. Newburgh, Esq.
McLaughlin & Stern PLLC
CityPlace Office Tower - Suite 1700
525 Okeechobee Blvd.
West Palm Beach, FL 33401-6349

Dianna George
c/o Steven S. Newburgh, Esq.
McLaughlin & Stern PLLC
CityPlace Office Tower - Suite 1700
525 Okeechobee Blvd.
West Palm Beach, FL 33401-6349

Dockside Canvas, LLC
c/o Fred Volkwein
409 24th Street
West Palm Beach, FL 33407-5401

Estate of Robin Disston
c/o Todd Disston
193 Riverbank Road
Stamford, CT 06903-3715

FP&L
PO Box 025576
Miami, FL 33102-5576

Fiore At the Gardens Condo Assoc Inc
c/o St. John Rossin Podesta Burr & Lemme
1601 Forum Place, Ste 700
West Palm Beach, FL 33401-8106

First Intracoastal Realty, LLC
c/o Sue Zabloudil, Esquire
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1700

Flagstar Bank, FSB
c/o Cheri Zmija
323 W. Lakeside Avenue, Ste. 200
Cleveland, OH 44113-1009

Frederick Volkwein
c/o Steven S. Newburgh, Esq.
McLaughlin & Stern PLLC
CityPlace Office Tower
525 Okeechobee Blvd.
West Palm Beach, FL 33401-6349

George & Jeri Maler
12509 World Cup Lane
Wellington, FL 33414-3502

George Schuhmann
3107 Lowell Avenue
Louisville, KY 40205-3041

HSBC Bank USA, N.A.
c/o Carlton Fields
Attn: Alan Rosenthal, Esq.
100 S.E. Second St., Ste. 4200
Miami, Florida  33131-2113

HSBC Bank USA, National Association
Payment Processing
MAC X2302-04C
One Home Campus
Des Moines, IA 50328-0001

J.P. Morgan Chase Bank
c/o Bankruptcy Team
2901 Kinwest Parkway
Irving, TX 75063-5816

JPMorgan Chase Bank, N.A.
c/o Shapiro, Fishman et al
4630 Woodland Corporate Blvd #100
Tampa, FL 33614-2429

Miriam M. Siskind Trust
3485 Lago De Talavera
Wellington, FL 33467-1071

Miriam Siskind Trust
3485 Lago De Talavera
Wellington FL 33467-1071

OB Real Estate Holdings 1732, LLC
c/o Stephen P. Drobny, Esq.
Jones Walker LLP
201 S. Biscayne Blvd., Suite 2600
Miami, FL 33131-4341

OB Real Estate Holdings LLC
375 Golfside Rd
Wexford PA 15090-9419

Ocean Reef Community Association, Inc.
c/o Irose Johnson
Eisinger, Brown, Lewis, Frankel & Chaiet
4000 Hollywood Blvd., Ste 265-S
Hollywood, FL 33021-6782

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Optimumbank
c/o Ben Harris, Esquire
Jones, Walker, Waechter et al.
201 S. Biscayne Boulevard, Suite 2600
Miami, FL 33131-4341

Palm Beach County Tax Collector
PO Box 3715
West Palm Beach, FL 33402-3715

Robert Gibson
c/o Steven S. Newburgh, Esq.
McLaughlin & Stern PLLC
CityPlace Office Tower - Suite 1700
525 Okeechobee Blvd.
West Palm Beach, FL 33401-6349

Rushmore Loan Management Services
P.O. Box 55004
Irvine, CA 92619-5004

Sara Dozier
c/o Michael Brown, Esquire
2620 Lake Shore Drive, Ste. 100
Riviera Beach, FL 33404-4603

Sheila Mouzer Smith, TTE
702 Marshall Road
West Palm Beach, FL 33413-3344

Trisun Financial Group, Inc.
c/o Marc Hurwitz
1777 Reisterstown Road
Pikesville, MD 21208-1306

Trump Plaza of the Palm Beaches Condominium
c/o Joshua M. Atlas, Esq.
515 North Flagler Drive, Suite 600
West Palm Beach, Florida 33401-4321

Trump Plaza of the Palm Beaches Condominium
c/o Michael Kampy (MGR)
525 S. Flagler Drive
West Palm Beach, FL 33401-5922

U.S. Bank National Association, as Trustee
c/o JPMorgan Chase Bank, N.A.
3415 Vision Drive
OH4-7133
Columbus, OH 43219-6009

U.S.Bank National Association,as Trustee
c/o Select Portfolio Servicing Inc.
3815 South West Temple
Salt Lake City, UT 84115-4412

US Department of Education
P O Box 16448
Saint Paul MN 55116-0448

US Dept. of Education
c/o Conserve
P.O. Box 457
Fairport, NY 14450-0457

US IRS
c/o Chuck Corbitt
1900 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409-3504

World Springs 888 International, LLC
Attn: Michael D. Tannenbaum, Esq.
2161 Palm Beach Lakes Blvd, Suite 304
West Palm Beach, FL 33409-6612

Zokaites Properties, LLC
c/o Frank Zokaites
375 Golfside Drive
Wexford 15090-9419

Brian K McMahon
1401 Forum Way
6th Floor
West Palm Beach, FL 33401-2325

Christopher George
c/o Sofiye Williams, Esq.
500 E. Broward Blvd.
Suite 1710
Fort Lauderdale, FL 33394-3012

David Fiore
c/o Sofiye Williams, Esq.
500 E. Broward Blvd.
Suite 1710
Fort Lauderdale, FL 33394-3012

Dianna George
c/o Steven S. Newburgh, Esq.
CityPlace Office Tower - Suite 1700
525 Okeechobee Blvd.
Palm Beach Gardens, FL 33401-6349

Fredrick Volkwein
c/o Richard Zaretsky, Esq.
1615 Forum Place
Suite 3A
West Palm Beach, FL 33401-2316

Harry J Ross
6100 Glades Rd #211
Boca Raton, FL 33434-4371

Jeffrey M Siskind
525 S. Flagler Drive #500
West Palm Beach, FL 33401-5938

Jeffrey Marc Siskind
3465 Santa Barbara Drive
Wellington, FL 33414-7269

Michael Brown, Esq.
2620 Lake Shore Dr #100
Riviera Beach, FL 33404-4603

Richard Fairchild
4502 Rende Ln
Lake Worth, FL 33461-4980

Robert Gibson
1709 22nd Avenue North
Lake Worth, FL    33460-6000

Sara Dozier
c/o Michael Brown Esq
2620 Lake Shore Dr #100
Riveria Beach, FL 33404-4603

Steven S. Newburgh, Esq.
525 Okeechobee Blvd., Suite 1700
West Palm Beach, FL 33401-6327

William L. Siskind
3485 Lago De Talavera
Wellington, FL 33467-1071

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)HSBC Bank USA, N.A.

(u)HSBC Bank USA, National Association as Tru

(u)Trump Plaza of the Palm Beaches Condominiu

(u)West Palm Beach    (u)Christiana Trust, Div. Wilmington Sav. Fun    (u)Fiore at the Gardens Condominium Assoc.
                      *DELETE PER ECF#670*                            *DELETE PER ECF#670*

End of Label Matrix
Mailable recipients    82
Bypassed recipients     6
Total                  88

Label Matrix for local noticing
0416-1
Case 18-11168
District of Maryland
Baltimore
Fri Mar 30 17:00:12 EDT 2018

Chance & Anthem, LLC
3445 Santa Barbara Drive
Wellington, FL 33414-7269

27220 Ocean Gateway, LLC
7745 Dawson Court
Lake Worth, FL 33467-7719

3GEN VC, LLC
c/o Gerald Cantor
4000 Hollywood Boulevard #500-N
Hollywood, FL 33021-1224

ABK South Properties, LLC
c/o George Booras, Esq.
1371 Hill Ave
Melbourne, FL 32940-6948

All Pro Pool Service
13557 Barberry Drive
Wellington, FL 33414-8518

Apostle Construction
716 Naylor Mill Road
Salisbury, MD 21801-1114

Bay Area Disposal
POB 189
Owings, MD 20736-0189

Beaver Tree Service
POB 2476
Salisbury, MD 21802-2476

Comptroller of the Treasury
Compliance Division, Room 409
301 W. Preston Street
Baltimore, MD 21201-2305

David Fiore, et al.
c/o Sofiye Williams, Esq.
500 E. Broward Blvd.
#1710
Fort Lauderdale, FL 33394-3012

Delmarva Power
500 N. Wakefield Drive
2nd Floor
Newark, DE 19702-5440

Delmarva Power & Light Co.
500 N Wakefield Dr Fl 2
Newark, DE 19702-5440

Edgar A. Baker, Jr., Esq.
Wicomico County Department of Law
125 North Division Street, Room 101
Salisbury, MD 21801-5030

Frederick R. Volkwein
2727 Rosemary Avenue #3
West Palm Beach, FL 33407-5310

Haynes Scaffolding & Supply, Inc.
1210 Ortega Road
West Palm Beach, FL 33405-1077

PTM Electric, Inc.
16971 W. Hialeah Drive
Loxahatchee, FL 33470-3729

Richard Bell
16192 Coastal Highway
Lewes, DE 19958-3608

Richard Bell
16192 Coastal Highway
Lewes, Delaware 19958-3608

Richard Neff
2760 Meadowlark Lane
West Palm Beach, Florida 33409-2019

Sovereign Gaming & Entertainment, LLC
3485 Lago De Talavera
Wellington, FL 33467-1071

State of Maryland DLLR
Division of Unemployment Insurance
1100 N. Eutaw Street, Room 401
Baltimore, MD 21201-2225

T.E. Smith & Son, Inc.
2043 Northwood Drive
Salisbury, MD 21801-7800

Wellington 3445, LP
375 Golfside Road
Wexford, PA 15090-9419

David Fiore
c/o Sofiye Williams, Esq
500 E. Broward Blvd
#1710
Fort Lauderdale, FL 33394-3012

Frederick Volkwein
2727 Rosemary Avenue #3
West Palm Beach, FL 33407-5310

George W. Liebmann
Liebmann & Shively, P.A.
8 W Hamilton Street
Baltimore, MD 21201-5008

Jeffrey Marc Siskind
Siskind Legal Group
3465 Santa Barbara Drive
Wellington, FL 33414-7269

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)27120 Ocean Gateway, LLC          (d)3GEN VC, LLC                      (d)ABK South Properties, LLC
7745 Dawson Court                    c/o Gerald Cantor                    c/o George Booras, Esq.
Lake Worth, FL 33467-7719            4000 Hollywood Boulevard #500-N      1371 Hill Avenue
                                     Hollywood, FL 33021-1224             Melbourne, FL 32940-6948


(d)All Pro Pool Service              (d)Apostle Construction              (d)Bay Area Disposal
13557 Barberry Drive                 716 Naylor Mill Road                 POB 189
Wellington, FL 33414-8518            Salisbury, MD 21801-1114             Owings, MD 20736-0189


(d)Beaver Tree Service               (d)David Fiore, et al.               (d)Frederick R. Volkwein
POB 2476                             c/o Sofiye Williams, Esq.            2727 Rosemary Avenue #3
Salisbury, MD 21802-2476             500 E. Broward Blvd. #1710           West Palm Beach, FL 33407-5310
                                     Fort Lauderdale, FL 33394-3012


(d)Haynes Scaffolding & Supply, Inc. (d)PTM Electric, Inc.               (d)Richard Neff
1210 Ortega Road                     16971 W. Hialeah Drive               2760 Meadowlark Lane
West Palm Beach, FL 33405-1077       Loxahatchee, FL 33470-3729           West Palm Beach, Florida 33409-2019


(u)Sovereign Gaming & Entertainment, LLC  (d)T.E. Smith & Son, Inc.     End of Label Matrix
INVALID ADDRESS PROVIDED             2043 Northwood Drive                 Mailable recipients    27
                                     Salisbury, MD 21801-7800             Bypassed recipients    14
                                                                         Total                  41
```