UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                                Case No. 18-16248-BKC-MAM

CHANCE & ANTHEM, LLC,                                Chapter 7

     Debtor.
_____/

**CHAPTER 7 TRUSTEE'S RESPONSE TO JEFFREY SISKIND'S MOTION FOR SANCTIONS [ECF NO. 163] AND REQUEST FOR SANCTIONS**

ROBERT C. FURR, the Chapter 7 Trustee for the above styled Debtor, Chance & Anthem, LLC (the "Debtor"), files his Response (the "Response") to the Motion for Sanctions ("Motion")[1] filed by Jeffrey M. Siskind on behalf of the former management of the Debtor ("Movant" or "Siskind")[ECF No. 163]. In support of the Response, the Trustee states as follows:

**Introduction**

1. The trustee's investigation to date reveals that the Debtor was little more than one of many artifices employed by Jeffrey Siskind to part ''investors" from their money. In another misguided effort to take the offensive, Mr. Siskind asks the Court to sanction the Trustee and his counsel for making argument in court papers that he admitted to commingling the Debtor's money with his attorney trust account. Mr. Siskind also makes not-so-veiled insinuations about scope of the litigation immunity privilege. Of course, he is signaling to the Trustee and his counsel of his future intentions.[2] We are not moved.

---

[1] The Motion fails to cite to any section of the Bankruptcy Code or Rules in support of the relief sought.
[2] There is no cash on this case. Since the appointment of the Trustee and his counsel, Mr. Siskind has advanced spurious objections to the Trustee's retention of counsel and forensic accountants; sought to remove the prior trustee for not returning his phone calls and has generally acted to increase the expense of administering the bankruptcy estate.

2. To be sure, Mr. Siskind admitted to commingling debtor funds with his attorney trust funds. To date, he has failed to produce a single trust account record. He claims the records were stolen. No police report has been filed. It is astounding that Mr. Siskind appears incapable of complying with Florida Bar Rule 5-1 (concerning the regulation of attorney trust accounts). The Trustee and his counsel do not apologize for brining this troubling fact to the Court's attention.

### Siskind's Testimony

3. On June 9, 2018, the Trustee conducted and adjourned, without objection, a Section 341 Meeting of Creditors in this case. Mr. Siskind appeared to testify on behalf of the Debtor. Mr. Siskind was generally evasive, claiming not to recall the source or use of many of the Debtor's assets and liabilities. This is evident from a review of the transcript. *See* 07/09/18 341 Hr'g Trans., a copy of which is annexed hereto as Exhibit "A" ("341 Trans.").

4. Mr. Siskind claims that all pertinent records and trust account ledgers had been stolen by a rogue paralegal. 341 Trans. at pp. 11:18-24; 12:1-9; 27:8-14.

5. At the 341 Meeting of Creditors, Siskind testified to utilizing his trust account for transactions involving the Debtor in at least three separate instances. Notably, the proceeds of said transactions cannot be reconciled with banks statements.

6. The word "commingle" is a verb that means "to combine (funds or properties) into a common fund or stock." Merriam Webster Dictionary (2018). It cannot be disputed that Siskind testified to commingling Debtor assets with his attorney trust account.

7. The first instance relates to a mortgage owned by the Debtor that Siskind sold to his business associate Frank Zokaites for $25,000 on October 12, 2017. This transaction was not disclosed in the Debtor's Statement of Financial affairs. *See* ECF No. 11. Nonetheless, when Mr. Siskind was asked about this transaction at the Debtor's 341 meeting, he testified that

2

monies generated from the sale were deposited in his law firm through a "transfer account[3]." Yet, those cannot be reconciled with a contemporaneous transfer from the trust account to the Debtor's Bank Account. *See* 341 Trans. at pp. 16:23-18:9.

> Q.   What consideration did Chance & Anthem receive for the sale of that note and mortgage, if any?
>
> A.   The tot -- Frank Zakitis who bought that note and mortgage, is that what you mean?
>
> Q.   Yes.
>
> A.   Received, I believe, a total of $25,000.
>
> **Q.   Who received $25,000?**
>
> **A.   I'm thinking that it went into the law firm, yeah.**
>
> Q.   So when you sold Chance & Anthem's $25,000 mortgage and promissory note, Frank Zakitis paid your law firm $25,000?
>
> A.   Well, I'm certain that he paid the 25 -- well, not a hundred percent certain of the amount, **but approximately $25,000, and I believe they all went through a transfer account into my law firm.**
>
> Q.   Okay.
>
> MR. FURR:
>
> Q.   What's a "transfer account"?
>
> THE WITNESS:
>
> A:   It's just an account that was set up to handle transactions between the law firm and Frank Zakitis.
>
> Q.   And is that a separate account?
>
> A.   Yeah.
> Q.   And where is that account located?
>
> A.   PNC Bank.

---

[3] A lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation. Florida Bar Rule 5-1.1(a).

> Q. What's the name of the account?
>
> A. Siskind Legal Services, LLC.
>
> Q: And it's only used to transfer monies between your law firm and other parties?
>
> A: That's why it originally existed. Frank Zakitis is located in Pittsburgh, and when he would pay bills, he would pay them at PNC. He kept the account at PNC down here.
>
> Q: And that PNC account, is that still open?
>
> A.  Yeah.

8. Mr. Siskind also testified that money purportedly invested by Carl Stone in the Debtor was deposited in his attorney trust account. Again, those funds cannot be reconciled with a corresponding deposit in the Debtor Bank Account. 341 Trans. at p. 19:2-15 (emphasis supplied).

> Q: Who were those private lenders?
>
> A: I believe one member was Richard Niff, and another one was Carl Stone and/or David Fiore.
>
> Q. Were monies from Richard Niff and David Fiore deposited into Chance & Anthem's bank account at J.P. Morgan?
>
> A. I don't believe so, no.
>
> Q.  All right. Where were those monies funded from for that purchase?
>
> A. Oh, I think one was. Yeah, I think Mr. Neff's money did go through the Chance & Anthem account. Don't hold me to that, but I'm pretty sure that's where that, and then **Carl Stone's money was deposited into my attorney trust account.**

9. Mr. Siskind also testified that money purportedly invested by Mr. Volkwein in the Debtor was also deposited in his attorney trust account. And yet again, those funds cannot be reconciled with a corresponding deposit in the Debtor Bank Account. 341 Trans. at p. 25:2-25

4

(emphasis supplied).

> Q:   And how much money did Mr. Volkwein lend to Chance & Anthem?
>
> A.   Well, according to my records $500,000.
>
> Q.   All right, and how was that loan documented?
>
> A.   I don't remember. I remember that I have a or had a power of attorney from Mr. Volkwein. Those funds came from properties that he sold at some point, which my firm handled the sale transaction of.
>
> Q.   And where were the funds loaned by Mr. Volkwein deposited?
>
> A.   I don't recall. **I imagine they ran through my trust account**, since we did the closing. Well, we didn't do the closing, but we represented him in the closing of the sale of properties he had in West Palm Beach.
>
> Q.   And you represented him in the loan that he made to Chance & Anthem?
>
> A.   No, I don't believe so.
>
> Q.   Was he represented by anyone in connection with the loan he made to Chance & Anthem?
>
> A.   No.
>
> Q.   What were the terms of the loan he made to Chance & Anthem?
>
> A.   I don't remember.

10.    Finally, Siskind testified that his attorney trust account bank records were used by him to prepare reconciliations of transactions involving the Debtor. The reconciliations, however, are now missing and Siskind has no ability to produce contemporaneous records to identify these transactions.

> Q.   And what were Mr. Volkwein's $500,000 used for?
>
> A.   I don't recall. At some point the history of his interest, I provided him with paperwork on that, but beyond that you'd have to ask him.
>
> Q.   What paperwork did you provide him?
>
> A.   Just a disbursement sheet as to where his money was used.

5

Q. How was that disbursement sheet generated?

A. By hand by me.

Q. And what documents would you have reviewed to generate that disbursement sheet?

A. It was more or less a ledger that I kept on him that I would update from time to time.

Q. What documents would you use to create that ledger?

A. Just my bank records at the time.

Q. The bank records of Chance & Anthem?

A. I don't remember whether I ever utilized Chance & Anthem's records to facilitate that report, no.

**Q. Would those have been your trust account records?**

**A. Some would have been, yeah.**

Q. All right. So other than your trust account records and Chance & Anthem records, if at all, what other records would you have reviewed to create that ledger?

A. I don't remember what bank account records, were involved in the review, but the one-page report that I gave was accurate.

Q. Whatever happened to that ledger?

A. It was with the books and records that were in my files when we vacated the office at 525 South Flagler.

Q. Those are the ones that you've testified Mr. Gibson took possession of?
A. I believe he removed them, yes.

Q. Have you filed a police report for the 16 missing files?

A. No, I didn't think the police report would be availing, because I did give him permission to take all of the dead files, and the understanding was the live files would come out to the project house in Santa Barbara, and the dead files, rather than discard them, he would remove and keep in his garage at his house.

6

11. The Trustee respectfully requests an award of sanctions against Mr. Siskind for the fees and costs incurred in responding to the Motion. A finding of bad faith supporting imposition of sanctions under court's inherent powers is warranted where an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for purposes of harassing an opponent. *In re Creative Desperation Inc.*, 415 B.R. 882, 895 (Bankr. S.D. Fla. 2009). An award of sanctions is appropriate here because the Motion raises only frivolous arguments made in bad faith and with complete and reckless disregard as to any legal or factual basis for the relief requested.

**WHEREFORE**, the Trustee respectfully requests entry of an order, (i) denying Jeffrey Siskind's Motion for Sanctions; (ii) awarding attorney's fees and costs incurred by the Trustee and his counsel in opposing the Motion; and (iii) granting such other relief as this Court deems just and proper.

Respectfully submitted on October 19, 2018.

                        **GENOVESE JOBLOVE & BATTISTA, P.A.**
                        *Attorneys for Chapter 7 Trustee*
                        100 S.E. Second Street, 44th Floor
                        Miami, Floirda 33131
                        Telephone: (305) 349-2300

                        By: /s/ *Jesus M. Suarez*
                              Jesus M. Suarez, Esq.
                              Florida Bar No. 60086
                              jsuarez@gjb-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion has been served upon all creditors and parties in interest registered to receive electronic notice via the Court's Case Management/Electronic Case Filing System as reflected on the attached Service List below on this 19th day of October, 2018.

        /s Jesus M. Suarez
        Jesus M. Suarez, Esq.

## SERVICE LIST

*Parties to receive electronic notice via CM/ECF*

Robert C Furr
danderson@furrcohen.com, rcf@trustesolutions.net

John H Genovese, Esq on behalf of Trustee Robert C Furr
jgenovese@gjb-law.com, hburke@gjb-law.com;gjbecf@gjb-law.com;gjbecf@ecf.courtdrive.com

Steven S. Newburgh: snewburgh@mclaughlinstern.com

Office of the US Trustee: USTPRegion21.MM.ECF@usdoj.gov

Jeffrey M Siskind: jeffsiskind@msn.com, jmsesq500@gmail.com

Jesus M Suarez on behalf of Trustee Robert C Furr
jsuarez@gjb-law.com, gjbecf@gjb-law.com;chopkins@gjb-law.com;jzamora@gjb-law.com;ecastellanos@gjb-law.com;gjbecf@ecf.courtdrive.com

Stuart A Young, Esq: syoung@ybplaw.com