UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                          Case No. 18-16248-BKC-MAM
                                                                Chapter 7

CHANCE & ANTHEM, LLC,

     Debtor.

_____/

ROBERT C. FURR not individually but                             ADV. NO.
as Chapter 7 Trustee of the estate of the
Debtor, Chance & Anthem, LLC,

     Plaintiff,

v.

JEFFREY M. SISKIND, individually and
d/b/a SISKIND LEGAL SERVICES,
TANYA SISKIND, individually and as Trustee of the,
SECOND SISKIND FAMILY TRUST,
FRANK ZOKAITES, individually,
CANNAMED PHARMACEUTICALS, LLC,
a Maryland Limited Liability Company,
OB REAL ESTATE HOLDINGS 1732, LLC, a
Florida Limited Liability Company,
SISKIND LEGAL SERVICES, LLC,
a Florida Limited Liability Company,
SOVEREIGN GAMING & ENTERTAINMENT, LLC,
a Florida Limited Liability Company
FLORIDA'S ASSOCIATION OF COMMUNITY
BANKS AND CREDIT UNIONS, INC. a Florida Corporation,
SYMPATICO EQUINE RESCUE, INC, a Florida Corporation,
WELLINGTON 3445, LP, a Florida Limited Partnership,
ZOKAITES PROPERTIES, LP, a Pennsylvania Limited Partnership,
and ROBERT GIBSON, individually.[1],

     Defendants.

_____/

_____

[1] Pursuant to Fed. R. Civ. P. 20, as incorporated by Fed. R. Bankr. P. 7020, the Defendants are joined in this action because they are liable jointly, severally, or with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and questions of law and fact common to the Defendants will arise in the action.

## ADVERSARY COMPLAINT
## TO AVOID AND TO RECOVER FRAUDULENT TRANSFERS,
## FOR TURNOVER, FOR AN ACCOUNTING, ALTER-EGO, SUBSTANTIVE
## CONSOLIDATION, INJUNCTIVE RELIEF AND FOR OTHER RELIEF

Robert C. Furr (the "Trustee"), not individually but as Chapter 7 Trustee of the bankruptcy estate of the Debtor, Chance & Anthem, LLC  (the "Debtor" or "C&A"), files this Adversary Complaint against JEFFREY M. SISKIND, individually and doing business as SISKIND LEGAL SERVICES ("Siskind"), TANYA SISKIND, individually (T. Siskind) and as Trustee of the Second Siskind Family Trust ("Family Trust"), FRANK ZOKAITES ("Zokaites")(Siskind, T. Siskind and Zokaites, are collectively referenced as the "Individual Defendants"), CANNAMED PHARMACEUTICALS, LLC, a Maryland Limited Liability Company ("Cannmed"), OB REAL ESTATE HOLDINGS 1732, LLC, a Florida  Limited Liability Company ("OB Real Estate"), SISKIND LEGAL SERVICES, LLC, a Florida Limited Liability Company ("Siskind Legal"), SOVEREIGN GAMING & ENTERTAINMENT, LLC, a Florida Limited Liability Company ("Sovereign"), FLORIDA'S ASSOCIATION OF COMMUNITY BANKS AND CREDIT UNIONS, INC. a Florida Corporation ("FLACC"), SYMPATICO EQUINE RESCUE, INC, a Florida Corporation ("Sympatico") WELLINGTON 3445, LP, a Florida Limited Partnership ("Wellington"), and ZOKAITES PROPERTIES, LP, a Pennsylvania Limited Partnership ("Zokaites Properties")(Family Trust, Cannmed, OB Real Estate, Siskind Legal, Sovereign, Wellington and Zokaites Properties are collectively referenced as the "Corporate Defendants") and ROBERT GIBSON, individually ("Gibson"), to avoid and to recover fraudulent transfers from the Debtor to the Defendants, for turnover of property, for an accounting, for alter-ego liability, for substantive consolidation, for injunctive relief and for other relief pursuant to Sections 105, 542, 544, 548, and 550 of Title 11 of the United States Code (the

"Bankruptcy Code"), Chapter 726 of the Florida Statutes, Rule 7001, et seq. of the Federal Rules of Bankruptcy Procedure and federal common law, and says:

## INTRODUCTION

1.      Jeffrey Siskind is an attorney licensed in Florida since 1998.  Siskind was the sole member, attorney and control person of the Debtor.  Siskind contends that the Debtor's alleged business affairs consisted of two primary ventures: (1) serving as a funding vehicle for a cannabis business in Maryland in exchange for 75% of the membership interests in that business; and (2) renovating a home in Wellington, Florida.

2.      In truth, Siskind used the Debtor in concert with the Corporate Defendants in order to divert over $3 million of creditor, investor and client funds and real estate for his benefit and the benefit of the other Individual Defendants.  Siskind, acting in concert with the Individual Defendants, later concealed the value of these diverted assets through a series of transactions involving the Corporate Defendants.  During the course of most of these transactions, Defendant Siskind was a Chapter 11 debtor before this Court.  *In re Siskind,* Case No. 13-13096-MAM. Defendant Siskind failed to properly disclose his interest in these transactions during his five (5) years as a debtor.

3.      The Trustee's investigation, to date, reveals that Siskind transferred his clients' and investors' funds indiscriminately between entities that he controls and were not used for legitimate business purposes.  For example, Siskind used investor monies to (i) transfer over $800,000 to himself; (ii) make payments in excess of $175,000 for his boats and airplanes; (iii) inexplicably transfer over $160,000 into his IOTA Trust account; (iv) fund a series of cash withdrawals in excess of $119,000; and (v) place millions of dollars of real estate purchased with investor funds in the hand of his associates and nominees.

4.      By this adversary proceeding, the Trustee seeks to recover the property (or its value, products, and replacements) fraudulently transferred by Siskind for the benefit of the creditors of the Debtor and its alter-egos.  Certain of the transfers identified in this adversary Complaint were made by alter-egos of the Debtor. The creditors of those entities, in turn, have sought to assert claims against the Debtor on the basis of its alter-ego liability.  Accordingly, the Trustee is a proper party with standing to pursue these transfers.

5.      The Trustee also seeks to substantively consolidate before this Court the related entities used to perpetuate the scheme (Defendants CannaMed, OB Real Estate, Siskind Legal, Sovereign, FLACC and Sympatico).

6.      The Trustee further seeks injunctive relief to prevent Siskind and his associates from dissipating, encumbering and/or absconding with the property of the Debtor or its alter-egos.[2]  In conjunction with the foregoing relief, the Trustee alternatively seeks the appointment of a monitor over the Corporate Defendants to oversee, manage and preserve the *status quo* over their purported business operations and holdings pending the conclusion of this proceeding.

### THE PARTIES, JURISDICTION AND VENUE

7.      On January 29, 2018, the Debtor filed a voluntary petition for bankruptcy relief under Chapter 7 of the United States Code (the "Bankruptcy Code") [ECF No. 1] in the United States Bankruptcy Court for the District of Maryland.

8.      On January 29, 2018, George W. Liebman was appointed Chapter 7 Trustee in the District of Maryland.

9.      On March 17, 2018, a Section 341 Meeting of Creditors was held in the District of Maryland.  The Debtor failed to appear.

---

[2] By separate motion, the Trustee will seek a Preliminary Injunction.

4

10.     On May 24, 2018, A Memorandum and Order Transferring Venue to the Bankruptcy Court for the Southern District of Florida.

11.     On May 25, 2018, Robert C. Furr was appointed as the Chapter 7 Trustee.  A section 341 Meeting of Creditors occurred on July 9, 2018 at 8:30 am in the Southern District of Florida, West Palm Beach Division.  The Debtor appeared through its sole managing member, Defendant Siskind.

12.     Defendant Siskind is the control person of the Corporate Defendants.  Siskind resides in Palm Beach County, Florida.  Defendant Siskind has at times acted as counsel to Defendants Zokaites, CannaMed, OB Real Estate, Siskind Legal, Wellington, and Sovereign. Defendant Siskind is also the sole manager and member of the Debtor, the individual who prepared and executed its bankruptcy schedules, and served as the Debtor's pre-petition counsel.

13.     Defendant T. Siskind is Siskind's wife.  She is a beneficiary of Family Trust and currently in possession of a Mercedes Benz acquired with funds fraudulently transferred from the Debtor.  T. Siskind also received funds fraudulently transferred by the Debtor.  T. Siskind resides in Wellington, Florida.

14.     Defendant Family Trust is a trust that upon information and belief is settled under the laws of the State of Florida and its trustee is Tanya Siskind.  Additionally, upon information and belief, Siskind is a beneficiary or party that asserts dominion and/or control of the Family Trust.

15.     Defendant Zokaites is a close business associate of Siskind.  He is the principal of Zokaites Construction, nominally the general partner of Defendant Wellington.  He is also the principal of Defendant Zokaites Properties.   Defendant Zokaites resides in Wexford, Pennsylvania.

16.     Defendant CannaMed is a limited liability company organized under the laws of the State of Maryland.  Its principal place of business was 27120 Ocean Gateway, Hebron, Maryland 21230.  The Debtor purports to own 75% of Defendant CannaMed.  The Debtor's bankruptcy schedules reflect investments in CannaMed and liabilities of CannaMed as liabilities of the Debtor.   The Debtor and CannaMed purported to share a principal place of business in Hebron, Maryland.

17.     Defendant OB Real Estate is an inactive Florida Limited Liability Company having a principal address of 375 Golfside Drive, Wexford, PA 15090.  Its manager is Defendant Zokiates and its principal place of business is the same as Defendants Wellington and Zokaites Properties. Its registered agent is Defendant Siskind at 525 S. Flagler Drive, Suite 500, West Palm Beach, FL 33401.

18.     Defendant Siskind Legal is an inactive Florida Limited Liability Company having its principal address of 525 S. Flagler Drive, Suite 500, West Palm Beach, FL 33401. From time to time, Defendant Siskind has purported to practice law through Defendant Siskind Legal.

19.     Defendant Sovereign is an inactive Florida Limited Liability Company having its principal address of 525 S. Flagler Drive, Suite 500, West Palm Beach, FL 33401.  Its sole manager and registered agent was William Siskind.  Defendant Siskind is believed to control Defendant Sovereign as a nominee of William Siskind, his deceased father.

20.     Defendant FLACC is a Florida corporation having its principal address of 525 S. Flagler Drive, Suite 500, West Palm Beach, FL 33401.  Its sole manager and registered agent is Defendant Siskind.  Siskind claims that Defendant FLACC provides services to community banks and credit unions.  FLACC appears to have no legitimate operations and appears to be a mere instrumentality created by Siskind to facilitate his scheme.

21.     Defendant Sympatico is a Florida corporation having its principal address of 3465 Santa Barbara Drive, Wellington, FL, 33144.  Its sole officer and registered agent is Defendant Siskind.  Siskind claims that Defendant Sympatico is a charity.  Sympatico appears to have no legitimate operations and appears to be a mere instrumentality created by Siskind to facilitate his scheme

22.     Defendant Wellington is a Florida Limited Partnership having its principal address of 375 Golfside Drive, Wexforx, P.A.  Defendant Wellington's general partner is Zokaites Contracting FL, LLC ("Zokaites Contracting").  Defendant Wellington was formed with the Florida Secretary of State on February 16, 2017.  The sole member and sole manager of Zokaites Contracting is Defendant Zokaites.

23.     Defendant Zokaites Properties is a limited partnership organized under the laws of Pennsylvania.  Zokaites and his wife are the principal partners.  It maintains its principal place of business in Wexford, Pennsylvania.  Although it is not registered to conduct business in Florida, it frequently engages in transactions in Florida, including those at issue in this adversary proceeding.

24.     W. Siskind was the elderly father of Defendant Siskind.  W. Siskind died during the course of this bankruptcy case.  The Trustee will contemporaneously record a caveat concerning the claims referenced in this adversary proceeding, and reserves the right to join any probate estate, his heirs or beneficiaries at a later date.  Upon information and belief, a probate estate has not been opened to administer the affairs of W. Siskind.

25.     Defendant Gibson is a resident of Palm Beach County.  He holds title to certain property at issue in this complaint and is joined principally in his capacity as a relief Defendant.

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 157(a) and 1334(b).

27.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (H) and (O).  The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court.

28.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTS SUPPORTING THE CLAIMS**

**A.      Chance & Anthem and CannaMed Pharmaceuticals, LLC**

29.     The Debtor purports to have been in the medical cannabis business through its ownership of CannaMed Pharmaceuticals, LLC ("CannaMed").  The Debtor has valued its interest in CannaMed at over $28 million.  Yet, on the Petition Date, the Debtor only had $48 in its checking account and approximately $150 worth of office equipment (also dissipated by Siskind prior to the Trustee's appointment).

30.     The Debtor paid many of CannaMed's expenses and appears to have made itself liable for a number of "loans" or "investments" acquired by Defendant Siskind purportedly for use in CannaMed.  In a recent court filing, Siskind identified litigation involving CannaMed as "the Debtor's only asset."  *See* Bankruptcy Petition No. 18-11168 (Bankr. D. Md.) at ECF No. 81, ¶7.

31.     The Debtor's bankruptcy schedules reflect that it received in excess of $1.3 million from third parties purportedly to assist it with its cannabis business[3]:  Among these creditors are (a) Frederick Volkwein ($500,000); (b) Richard Neff ($526,000); (c) ABK South Properties, LLC ($250,000); (d) Gen VC, LLC ($100,000); and (e) Richard Bell ($50,000).

---

[3] The Trustee's investigation into the extent, validity and priority of the investments is ongoing and remain subject to further diligence and reconciliation.  The Trustee reserves all rights with respect to the foregoing claims, including but not limited to the right to seek to subordination or disallowance of any claim that is filed against the bankruptcy estate.

32.     Like the Debtor, CannaMed never operated a *bona fide* business.  In truth, it was little more than a shell used by Defendant Siskind to defraud creditors, conceal assets, and facilitate his use of assets placed in his trust by clients and investors.

**B.     Christopher George**

33.     Prior to May 2013, Defendant Siskind was retained as an attorney by Christopher George ("George").  George, who is incarcerated, retained Defendants Siskind and Siskind Legal to establish a trust for the benefit of his minor child.  The Trust was to be funded with $2 million in cash and George's homestead located at 3485 Lago de Talavera, Lake Worth, Florida, 33467 (the "Talavera House").

34.     On May 8, 2013, Michael Haggerty (George's father-in-law) by and through a power of attorney, quitclaimed the Talavera House to 3485 Lago de Talavera Trust ("Talavera Trust").  The Talavera Trust was settled by Defendants Siskind and Siskind Legal on George's behalf.  The quitclaim deed was also prepared by Defendant Siskind.

35.     On December 24, 2013, Defendant Siskind caused George's wife Dianna George to transfer $2 million belonging to George to an attorney trust account denominated "Siskind Trust Account" ending in 7721 maintained by Defendants Siskind and Siskind Legal.

36.     Defendant Siskind, as set forth in greater detail below and in Table 1, used the Debtor and its alter-egos to abscond with George's $2 million and the Talavera House.  George, acting through Dianna George, has filed a claim a proof of claim against the estate in the amount of $2,000,000, alleging among other things, conversion, fraud and breaches of fiduciary duty.

37.     Defendant Siskind deposited the funds obtained from George into his IOTA Trust account and quickly used them for his own personal benefit.  Among other things, Siskind purported to structure a loan transaction to Defendant Sovereign in the amount of approximately

$1.9 million.  The balance of the funds ($70,000) were used to pay a relative's personal expenses.

38.    After transferring the funds to Defendant Sovereign, purportedly for bona fide investment purposes, Siskind proceeded to use those funds for his own personal benefit, including but not limited to (i) transferring $1.15 million to FLACC, later used to purchase an office condominium (defined below as the "Office Space"); (ii) withdrawing $100,000; (iii) acquiring an existing mortgage on the Talavera House (defined below); (iv) purchasing real estate at 114000 Torchwood Court in Wellington, Florida in the name of Beacon Acquisition & David Fiore; (v) transferring $25,000 to Defendant Siskind Legal; (vi) transferring $25,000 to Defendant Siskind; and (v) dissipating another $373,379 through a series of other transfers, including to third parties (Ocean Reef Club, The Beach Club, Mar-A-Lago Club, Old Guard Club & Going Aire) for the benefit of Siskind and his father, William Siskind  (collectively, the "Sovereign Cash Out").

39.    In sum, Defendant Siskind obtained $2 million from his client, Christopher George, and used that money to fund his family's lifestyle and other investments through a series of artifices used in conjunction with the Debtor to part Mr. George from his money for the benefit of Defendant Siskind and his family.  Mr. George, in turn, seeks to hold the Debtor liable for Siskind's conduct as an alter-ego or otherwise, as evidence by his proof of claim against the Debtor's bankruptcy estate.  Mr. George, notably, received no apparent benefit from Siskind's use of these funds.

## TABLE 1 – CHRISTOPHER GEORGE RELATED TRANSFERS



C.    <u>Carl Stone & Richard Neff</u>

40.    On or about August 9, 2015, based on Siskind's representations, Carl Stone and his associate David Fiore ("<u>Stone</u>") transferred $800,000 to an attorneys' trust account maintained by Defendants Siskind and Siskind Legal for investment purposes in the improvements to real estate located at 3445 Santa Barbara Drive, Wellington, FL  33414 (the "<u>Santa Barbara House</u>").

41.    Defendant Siskind purportedly was in the process of renovating the Santa Barbara House in order to later sell it for a profit.  Defendants Siskind and Siskind Legal Services agreed that they would record proper instruments in order to protect Stone's interest in the Santa Barbara House.

42.    Defendants Siskind and Siskind Legal never recorded a security interest in favor of Stone against the Santa Barbara House.  Instead, Defendant Siskind used his law firm's bank accounts (Defendant Siskind Legal) to (i) transfer $35,000 to FLACC and from those proceeds $30,000 to himself; (ii) $750,000 to FLACC of which $725,000 were returned to the Debtor; (iii) the balance of the proceeds used to purchase the Santa Barbara House (collectively, the "<u>Stone Cash Out</u>").

43.    In sum, Defendant Siskind obtained $800,000 from Carl Stone for investment purposes, and used that money to fund his lifestyle and other investments through a series of artifices used in conjunction with the Debtor to part Mr. Stone from his money for the benefit of Defendant Siskind.  Mr. Stone, in turn, seeks to hold the Debtor liable for Siskind's conduct as evidence by his proof of claim against the Debtor's bankruptcy estate.

44.    Richard Neff also loaned the Debtor money for use in the renovation of the Santa Barbara House.  On October 6, 2015, Neff transferred $500,000 to the Debtor.  Similarly,

Defendant Siskind failed to record a mortgage or perfect any other security protecting Neff's investment in the Santa Barbara House.  Instead, Defendant Siskind transferred $59,000 from the Debtor to purchase a Mercedes Benz for Defendant Tanya Siskind but purchased in the name of the Family Trust (the "Mercedes Transfer").  *See* Table 2, *infra*.

45.     As set forth in greater detail below, Defendant Siskind later refinanced the Santa Barbara House without recognizing the investments of Stone and Neff, and yet again using those proceeds for his own purposes.

46.     In sum, Defendant Siskind obtained $500,000 from Richard Neff for investment purposes, and used that money to fund his lifestyle and other investments through a series of artifices used in conjunction with the Debtor to part Mr. Neff from his money for the benefit of Defendant Siskind.  Mr. Neff, in turn, seeks to hold the Debtor liable for Siskind's conduct as evidence by his proof of claim against the Debtor's bankruptcy estate.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## TABLE 2 – CARL STONE & RICHARD NEFF TRANSFERS



D.    **Fredrick Volkwein**

47.    On or about November 17, 2014, based on Siskind's representations Fred Volkwein, either directly or through Sarenil Associates, LLC, deposited $1,157,623 into the Debtor.

48.    In this instance, Defendant Siskind deposited the funds in the Debtor's bank account and quickly proceeded to use the funds for his personal benefit by, among other things transferring (i) $230,000 to FLACC of which $188,000 was transferred to Defendant Siskind and $15,000 was subsequently transferred to Defendant Siskind Legal; (ii) $101,500 to himself through six separate transfers; (iii) $100,000 to his IOTA Trust Account; (iv) $58,000 to "Fenderhooks" in an apparent repayment to Volkwein; (v) $45,000 to George Maler in satisfaction of another debt; (vi) $43,500 to Crystal Title and Equity regarding "Fiore"; and (vii) $26,000 to Defendant Sovereign (collectively, the "Volkwein Cash Out").  *See* Table 3, *infra*.

49.    Siskind used Volkwein's own funds to repay $535,109 to Volkwein in consideration of his prior investment.

50.    On August 7, 2018, the Sarenil Associates, LLC filed a proof of claim against the Debtor's bankruptcy estate in the amount of $669,124 (Claim No. 3).


[REMAINDER OF PAGE INTENTIONALLY BLANK]

## TABLE 3 – FREDERICK VOLKWEIN TRANSFERS



(a) - Two deposits totaling $20,000 from Siskind IOTA in same time period

E.      **The Real Estate Transactions**

51.      Defendant Siskind used also the Debtor and its alter-egos to conceal his use of client and investor assets for his own personal benefit through transactions involving four (4) real properties in Palm Beach County, Florida: (1) The Talavera House; (2) The Santa Barbara House, (3) The Office Space; and (4) The Cross Creek Condominium.

*3485 Lago de Talavera*

52.      On or about December 2013, George instructed his attorney, Defendant Siskind, to use a portion of the $2 million held by Defendant Siskind for the benefit of George to satisfy a mortgage encumbering the Talavera House.  The mortgage was held by Michelle Watson in the principal amount of $200,000.

53.      The Legal Description of the Talavera House is:

> TALAVERA PUD LT 29, according to the Plat thereof, as recorded in Plat Book 105, Page 44, of the Public Records of Palm Beach County, Florida
>
> Parcel Control Number:        00-42-44-19-09-000-0290

54.      Instead of satisfying the mortgage, however, Defendant Siskind obtained an assignment of the mortgage in favor of Defendant Sovereign.  The assignment was prepared by Defendant Siskind.  W. Siskind, Siskind's deceased father, was the sole member of Defendant Sovereign and Defendant Siskind admits to being its control person.  Defendant Sovereign is the Debtor's alter-ego.

55.      On November 14, 2014, Defendant Siskind prepared and recorded a *Notice of Lis Pendens* in Palm Beach County (Filing #20558894) purporting to give notice of the foreclosure of a mortgage by Defendant Sovereign.

56.      On February 5, 2014, Defendant Siskind prepared and recorded a so-called

"indemnity mortgage" against the Talavera House in the amount of $300,000 in order to secure legal fees that he or Defendant Siskind Legal could potentially incur at a future date while providing legal services to George or Talavera Trust (the "Indemnity Mortgage").

57.     George alleges that no legitimate fees were incurred by Defendants Siskind or Siskind Legal, and that the indemnity mortgage was orchestrated by Defendant Siskind to part him from his assets.  Upon information and belief, no consideration was ever given to George by Defendants Siskind or Siskind Legal in exchange for the Indemnity Mortgage.

58.     On January 8, 2015, Defendant Siskind caused the Talavera Trust, through fraud and misrepresentation, to transfer the Talavera House to Defendant Sovereign through a deed-in-lieu of foreclosure.   At Defendant Siskind's insistence, the Talavera Trust conveyed to Defendant Sovereign all right, title and interest in the Talavera House.    The deed in favor of Defendant Sovereign was prepared and recorded by Defendant Siskind.

59.     On February 25, 2016, Defendant Sovereign gave a mortgage against the Talavera House in favor of Tatarow Family Partners, Ltd. ("Tatarow") in the amount of $300,000.  Upon information and belief, the proceeds of the loan collateralized by the Talavera House were wholly misappropriated by Defendants Siskind for his own personal use and never provided any value to Defendant Sovereign (the "First Talavera Cash Out").

60.     On July 19, 2016, Defendants Siskind and Siskind Legal sold the Indemnity Mortgage to George Maler and Jeri Maler for $100,000 (the "Second Talavera Cash Out").  The proceeds of the First Talavera Cash Out were transferred to Defendants Siskind and Siskind Legal for their own benefit and never provided any value to the Debtor or its alter-ego Defendant Sovereign.

61.     Subsequently, Tatarow initiated a foreclosure proceeding against the Talavera

House in a case captioned *Tatarow Family Partners LTD v. Sovereign Gaming & Entertainment, LLC, etc.*, Case No. 50-2016-CA-012892-XXXX-MB, pending in the Seventeenth Judicial Circuit of Florida (the "Talavera Foreclosure Case").

62.    On March 5, 2018. Tatarow assigned its mortgage to Defendant Zokaites Properties, which was substituted as plaintiff in the Talavera Foreclosure Case (the "Tatarow Mortgage Transfer").  Defendant Siskind structured this transaction in order to fraudulently obtain ownership of the Talavera House below market value and without paying value to Defendant Sovereign, the Debtor's alter-ego.

63.    The Talavera Foreclosure case remains pending. The Talavera House is presently believed to be occupied by Defendant Siskind's elderly mother Judy Siskind.  Although it was titled in the name of Defendant Sovereign, the title to same has been transferred to Defendant's Siskind former paralegal, Robert Gibson, through a series of quit claim deeds allegedly executed by Defendant Sovereign to the Maler's and finally to Defendant Siskind's former paralegal Robert Gibson (the "Gibson Transfer").  It is believed that Mr. Gibson has further pledged a mortgage against the house in favor of the Maler's and that Mr. Gibson is attempting to facilitate a repayment of the Maler's debt and preserve the value of the Talavera House for the benefit of Mr. Siskind's creditors.

64.    The First Talavera Cash Out, Second Talavera Cash Out, Tatarow  Mortgage Transfer and Gibson Transfer shall collectively be referred to as the "**Talavera Transfers**")

### *The Santa Barbara House*

65.    On August 25, 2015, the Debtor purchased the Santa Barbara House from JP Morgan Chase Co. for $1,250,000.  Upon information and belief, the Debtor used at least $1 million in funds from Neff and Stone to fund the purchase of the Santa Barbara House.

66.     The Legal Description of the Santa Barbara House is:

> SOUTHFIELDS PHASE 1 WELLINGTON
> COUNTRYPLACE LT 2 PUD, according to the Plat
> thereof, as recorded in Plat Book 39, Pages 19 through 22,
> of the Public Records of Palm Beach County, Florida

> Parcel Control Number:          73-41-44-21-03-000-0020

67.     On November 13, 2015, Defendant Siskind encumbered the Santa Barbara House with a mortgage in favor of New Wave Loans Residential, LLC in the amount of $812,500.  The mortgage instrument was executed by Defendant Siskind as managing member of the Debtor. The Mortgage purported to secure a balloon loan in the amount of $812,500 plus accumulated interest which matured in December 2018 (the "First Santa Barbara Cash Out").

68.     The funds obtained from the First Santa Barbara Cash Out were deposited in the Debtor and quickly thereafter used by Siskind to fund his own personal expenses, including (i) five payments to Siskind for $107,500; (ii) a transfer of $61,719.63 to K Title Company LLC fbo Jeffrey Siskind; (iii) two payments of $145,950 to George Maler; (iv) two payments totaling $117,000 for aircraft related expenses; (v) thirteen cash withdrawals totaling $82,000; (vi) a payment of $62,506 to Defendant Zokaites Properties for a "loan payoff;" (vii) two transfers totaling $60,000 to Siskind's IOTA trust accounts; and (viii) four transfers totaling $30,000 to Defendant Sovereign.

69.     On March 23, 2016, Defendant Siskind further encumbered the Santa Barbara House with a mortgage in favor of ABK South Properties, LLC in the amount of $500,000.  The mortgage instrument was executed by Defendant Siskind as managing member of the Debtor. The Mortgage purported to secure a balloon loan in the amount of $812,500 plus accumulated interest which matured on December 2018.  Upon information and belief, the proceeds of this

loan incurred by the Debtor were transferred to Defendant Siskind for his own personal use and were never of any value to the Debtor or its alter-egos (the "Second Santa Barbara Cash Out").

70.    The proceeds of the Second Santa Barbara Cash Out, to date identified as $100,000 deposited in the Debtor's bank account, were again quickly used by Siskind to fund his own personal expenses including (i) six transfers totaling $48,625 to FLACC; (ii) a transfer of $10,000 to Defendant Siskind Legal; and (iii) $30,231 to fund a payment to Long Badger & Sheller purportedly in consideration of Cannamed's rent expense.

71.    On November 8, 2016, New Wave Lenders initiated a foreclosure proceeding against the Santa Barbara House. *New Wave Lenders 2015 B LP v. Chance & Anthem, LLC,* Case No. 50-2016-CA-012543.

72.    On January 23, 2017, Defendant Wellington acquired the first position mortgage in favor of New Wave Lenders for $898,231 and subsequently substituted itself as plaintiff in the foreclosure case.

73.    On June 12, 2017, the Santa Barbara House was sold at a foreclosure sale to Defendant Wellington for $1,000,100 ("Santa Barbara Foreclosure Transfer").

74.    The Santa Barbara House, in summary, was used by Defendant Siskind to (1) conceal the use of $1 million he wrongfully obtained from Stone and Neff; (2) obtain over $800,000 in additional cash from the equity in the house mortgaged by New Wave Lenders and ABK South Properties, LLC; and (3) transfer the value of the Santa Barbara House from the Debtor free and clear of all liens, claims and encumbrances to his nominee Defendant Zokaites through the use of Defendant Wellington in the Santa Barbara Foreclosure Transfer.

75.    Notably, the Santa Barbara House is adjacent to Siskind's personal residence located within the municipality of Wellington, Florida.  It is believed that Defendant Siskind

21

replatted the Santa Barbara House in order to add land to the home he owns with Tanya Siskind (the "Siskind Parcel Transfer").

76.     The First Santa Barbara Cash Out, the Second Santa Barbara Cash Out, the Santa Barbara Foreclosure Transfer and the Siskind Parcel Transfer shall collectively be referred to as the "**Santa Barbara Transfers**")

### *The Trump Office Suite / OB Real Estate Holdings 1732, LLC*

77.     Defendant OB Holdings was the fee simple owner of the suite of offices where Defendants Siskind, W, Siskind, Siskind Legal and Sovereign operated. The suite consisted of the entire fifth (top) floor of the Trump Office Center on 525 S. Flagler Drive, West Palm Beach Florida (the "Office Suite").

78.     The Legal Description of the Office Suite is:

> Condominium Units CCU3A2, CCU3B2 and CCU3C2, Trump Plaza of the Palm Beaches, a condominium, according to the Declaration of Condominium thereof, recorded in Official Records Book 4800, Page 457, with all exhibits and amendments thereof, Public Records of Palm Beach County, Florida, and any and all amendments thereto, together with an undivided interest in the common elements appurtenant thereto a set forth in said declaration, together with an undivided 16.93% interest in Unit No. CCU3 as set forth in the Declaration of Agreement for Commercial Unit Parking Facilities as recorded in Official Records Book 19010, Page 70, Public Records of Palm Beach County, Florida
>
> Parcel Control Number        74-43-43-22-25-003-0012

79.     On February 27, 2014, Defendant OB Holdings acquired the Office Suite through a foreclosure proceeding captioned *Optimum Bank v. TP5, LLC, et al*, Case No. 50-2010-CA-026014 (17th Judicial Circuit). In this original proceeding, Optimum Bank foreclosed on a first position mortgage recorded against the Office Suite, which at the time was owned by TP5, LLC,

a limited liability company.  Defendant Siskind was the sole managing member and registered agent for TP5, LLC.  He was also a guarantor of the indebtedness to Optimum Bank.  Ultimately, through the foreclosure case, Optimum Bank took title to the Office Suite through Defendant OB Holdings.

80.    On April 30, 2014, Defendant Siskind acquired the shares of Defendant OB Holdings from Optimum Bank and placed them in the name of W. Siskind.  Through Defendant OB Holdings, Defendant Siskind acquired fee simple ownership of the Office Suite (the "Office Suite Repurchase").

81.    Defendant Siskind used the $1 million from Christopher George to fund the Office Suite Repurchase.  Defendant Siskind accomplished the Office Suite Repurchase by purporting to "lend" $1 million allegedly held in trust by Defendants Siskind and Siskind Legal to Defendant Sovereign (an alter-ego of the Debtor).  Although Defendant Sovereign funded the purchase of Defendant OB Real Estate, it received no consideration or reasonably equivalent value in connection with the transaction (the "First Office Suite Cash Out").

82.    After acquiring the Office Suite, Defendant Siskind proceeded to encumber and cash out of the Office Suite much as he did with the Talavera House and the Santa Barbara House.

83.    On September 3, 2014, Defendant Siskind encumbered the Office Suite with a mortgage in favor of George Maler and others (the "Maler Lenders") in the amount of $200,000.  The mortgage instrument was executed by W. Siskind (deceased) as managing member of the Debtor's alter-ego Defendant OB Real Estate.  Upon information and belief, the proceeds of this loan incurred by the Defendant OB Real Estate were transferred to Defendants Siskind through his IOTA Trust Account for his own personal use and were never of any value to the Debtor or

its alter-ego Defendant OB Real Estate (the "Second Office Suite Cash Out").

84.     On November 28, 2014, Defendant Siskind further encumbered the Office Suite by increasing the indebtedness to the Maler Lenders by $150,000 to $350,000.  The mortgage instrument was executed by W. Siskind as managing member of the Debtor's alter-ego Defendant OB Real Estate.  Upon information and belief, the proceeds of this loan incurred by Defendant OB Real Estate were transferred to Defendants FLACC, Siskind and W. Siskind for their own personal use and were never of any value to the Debtor or its alter-ego Defendant OB Real Estate (the "Third Office Suite Cash Out").

85.     On March 28, 2015, Defendant Siskind further encumbered the Office Suite by increasing the indebtedness to the Maler Lenders by $150,000 to $500,000.  The mortgage instrument was executed by W. Siskind as managing member of the Debtor's alter-ego Defendant OB Real Estate.  Upon information and belief, the proceeds of this loan incurred by Defendant OB Real Estate were transferred to Defendants FLACC and Sovereign for the personal use of Siskind and W. Siskind and were never of any value to the Debtor or its alter-ego Defendant OB Real Estate (the "Fourth Office Suite Cash Out").

86.     On September 20, 2015, Defendant Siskind further encumbered the Office Suite by increasing the indebtedness to the Maler Lenders by $250,000 to $750,000.  The mortgage instrument was executed by W. Siskind as managing member of the Debtor's alter-ego Defendant OB Real Estate.  Upon information and belief, the proceeds of this loan incurred by Defendant OB Real Estate were transferred to Defendants Siskind and W. Siskind for their own personal use and were never of any value to the Debtor or its alter-ego Defendant OB Real Estate (the "Fifth Office Suite Cash Out").

87.     On November 28, 2016, W. Siskind resigned as the sole managing member of OB

real Estate and was replaced with Defendant Zokaites.

88.    On January 31, 2018, Defendant Zokaites caused Defendant OB Real Estate to transfer its interest in the Office Suite in exchange for $1.2 Million (the "Office Suite Sale"). Upon information and belief, the proceeds of the Office Suite Sale were transferred to Defendants Siskind and Zokaites for their own personal use and were never of any value to the Debtor or its alter-ego Defendant OB Real Estate.

89.    The Office Suite, in summary, was used by Defendant Siskind to (1) conceal the use of $1 million he wrongfully obtained from his client Christopher George through Defendant Sovereign; (2) obtain over $750,000 in additional cash from the Office Suite in mortgages provided by the Maler Lenders; (3) transfer the value of Office Suite from the Defendant OB Real Estate to Defendant Zokaites; and (4) consummate the Office Suite Sale in order to liquidate the remaining equity in the Office Suite without providing any value to Defendant Sovereign (an alter-ego of the Debtor) in exchange for its original $1 million contribution for the Office Space Repurchase.

90.    The Office Suite Repurchase, First Office Suite Cash Out, Second Office Suite Cash Out, Third Office Suite Cash Out, Fourth Office Suite Cash Out, Fifth Office Suite Cash Out, Fifth Office Suit Cash Out and the Office Suite Sale shall collectively be referred to as the "**Office Suite Transfers**")

### *The Cross Creek Condominium*

91.    On December 2, 2015, Defendant Siskind caused the Debtor to obtain an Assignment of Mortgage from George A. Maler recorded against real property located in Cross Creek Condominium at 1500 N Congress Avenue, Unit B-6, West Palm Beach, Florida  33401 (the "Cross Creek Condominium").

92.     The Legal Description of the <u>Cross Creek Condominium</u> is:

>   CROSS CREEK COND UNIT B-6 BLDG 9, a
>   condominium according to the Declaration thereof recorded
>   in Official Record Book 3262, Page 1812, of the Public
>   Records of Palm Beach County, Florida.
>
>   Parcel Control Number        74-43-43-18-05-000-2006

93.     On August 1, 2017, the Debtor, through Defendant Siskind, filed a Notice of Lis Pendens concerning the CrossCreek Condominium and initiated a foreclosure proceeding against its owners *Imitiaz Mohammed and Zoreeda Mohammad*, et al. Case No (20-2017-CA-008682XXXXMB).

94.     On October 12, 2017, the Debtor executed and Assignment of Mortgage from the Debtor to Zokaites Properties concerning the mortgage it owned on the Cross Creek Condominium (the "**Cross Creek Transfer**"). Upon information and belief, the Debtor did not receive any value for assignment of its mortgage to Defendant Zokaites Properties.

**E.      The Transfers at Issue**

95.     During the Four Years prior to the Petition Date**, Defendant Siskind** using the Debtor or its alter-ego **Corporate Defendants**, engaged in the following transactions which reflect transfers of real estate and cash either to him individually or nominally to third parties but for his benefit:

>   a.  The Sovereign Cash Out;
>
>   b.  The Stone Cash Out
>
>   c.  The Volkwein Cash Out
>
>   d.  The Stone Cash Out;
>
>   e.  The Mercedes Transfer;

26

    f.   The Talavera Transfers

    g.   The Santa Barbara Transfers

    h.   The Office Suite Transfers

    i.   The Cross Creek Transfer; and

    j.   Additionally, Siskind withdrew over $119,000 from the Debtor's bank accounts in cash for his own personal benefit in the manner set forth at Exhibit "A," and referred to herein as the "<u>Siskind Cash Transfers</u>"

96.    During the Four Years prior to the Petition Date, Defendants **T. Siskind and Family Trust** engaged in the Mercedes Transfer which reflects the transfer of property of the Debtor: Additionally, Tanya Siskind was paid $17,000 by the Debtor for which the Debtor received no value (the "<u>Tanya Siskind Cash Transfer</u>") in the manner set forth at Exhibit "B." Tanya Siksind was also a beneficiary of the Santa Barbara Transfers.

97.    During the Four Years prior to the Petition Date, **Defendant Zokaites** engaged in the following transactions which reflect transfers of real estate and cash either to him individually or nominally to third parties but for his benefit:

    a.   The Talavera Transfers;

    b.   The Santa Barbara Transfers; and

    c.   The Office Suite Transfers.

98.    During the Four Years prior to the Petition Date, **Defendant Wellington** engaged in the Santa Barbara Transfer which reflects a transfer of real estate for its benefit:

99.    During the Four Years prior to the Petition Date, **Defendant Zokaites Properties** engaged in the Talavera Transfers and Cross Creek Transfers, each of which reflects transfers of real estate and cash either to him individually or nominally to third parties but for its benefit:

a.  The Talavera Transfer;

b.  The Cross Creek Transfer.

100.    During the Four Years prior to the Petition Date, **Defendant Sympatico** benefitted from the scheme by (i) $11,354.50 from the Debtor; (ii) $12,540 from Siskind Legal; (iii) $15.933 from FLACC; and (iv) $11,498.05 from Siskind's DIP Account (collectively, the "Sympatico Transfers").  Additionally, Siskind deposited over $25,000 in cash into Sympatico's bank accounts.

101.    The transfers of cash and real estate described herein were orchestrated by Defendant Siskind in order to conceal the source and use of funds that he misappropriated from clients and investors alike in a manner adverse to his fiduciary obligations to his clients, the Debtor, and its alter-egos, and were designed to hinder, delay and/or defraud creditors of the Debtor and its alter-egos.

102.    Additionally, during the Four Years prior to the Petition Date, **Defendant Gibson** engaged in the Talavera Transfer which reflects a transfer of real estate to him individually.

**D.      Siskind's Chapter 11 Bankruptcy Case**

103.    On February 11, 2013, Siskind filed a personal bankruptcy petition under Chapter 11 of the Bankruptcy Code.  Notably, Siskind appeared as his own counsel and regularly appears as counsel on behalf of clients in the Bankruptcy Court.

104.    On June 11, 2018, Siskind's personal bankruptcy case was dismissed.    The transactions at issue in this adversary proceeding occurred during the pendency of his bankruptcy case.

105.    During the course of Siskind's bankruptcy case, Siskind regularly filed operating reports and other papers that routinely failed to disclose his interests in the property and

transactions identified in this adversary proceeding.

**E.**    **Conditions Precedent**

106.    All conditions precedent to the institution of this action have been performed, have occurred, have been waived or have otherwise been excused.

**F.**    **The Causes of Action**

**COUNTS 1-7**
**DECLARATORY JUDGMENT SEEKING ALTER EGO LIABILITY OF CANNAMED,**
**OB REAL ESTATE, SISKIND LEGAL, SOVEREIGN, FLACC, SYMPATICO**
**AND WELLINGTON**

The Trustee sues Defendants CannaMed, OB Real Estate, Sovereign, Siskind Legal, Wellington, FLACC and Sympatico and alleges:

107.    The Trustee restates and realleges paragraphs 1 through 106, as if fully set forth herein.

108.    This is an action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, *et seq*. seeking a determination that at all times material hereto, the Defendant at issue in each respective Count herein was the alter ego of the Debtor and that all of the assets and liabilities of said Defendant be deemed assets and liabilities of this bankruptcy estate.

| COUNT | DEFENDANT | RELATED TRANSACTION |
|---|---|---|
| 1 | CannaMed | Liabilities of the Debtor (¶¶21-24) |
| 2 | OB Real Estate | Office Suite Transfers |
| 3 | Sovereign | Talavera Transfers<br>Office Suite Transfers |
| 4 | Siskind Legal | Sovereign Cash Out<br>Stone Cash Out<br>Volkwein Cash Out<br>Talavera Transfers<br>Santa Barbara Transfers<br>Office Suite Transfers |
| 5 | Wellington | Santa Barbara Transfers |

| COUNT | DEFENDANT | RELATED TRANSACTION |
|---|---|---|
| 6 | FLACC | Sovereign Cash Out, Stone Cash Out, Volkwein Cash Out |
| 7 | Sympatico | Sympatico Transfers |

109.    At all times material hereto, the Defendant at issue in each respective Count herein was formed and/or operated for an improper purpose – to, among other things, hinder, delay and/or defraud the creditors of the Debtor.

WHEREFORE, the Trustee demands the entry of an order and/or judgment against Defendants CannaMed, OB Real Estate, Sovereign, Siskind Legal, Wellington, FLACC and Sympatico: (i) declaring that each Defendant is the alter ego of the Debtor at all times material to this action; (ii) declaring that all of the assets and liabilities of each Defendant be deemed assets and liabilities of this bankruptcy estate; and (iii) for any other relief the Court deems appropriate.

**COUNTS 8-14**
**ACTION FOR SUBSTANTIVE CONSOLIDATION OF DEFENDANTS CANNAMED, OB REAL ESTATE, SISKIND LEGAL, SOVEREIGN, FLAC, SYMPATICO, AND WELLINGTON WITH THE DEBTOR'S BANKRUPTCY ESTATE**

The Trustee sues Defendants CannaMed, OB Real Estate, Sovereign, Siskind Legal, Wellington, FLACC and Sympatico and alleges:

110.    The Trustee repeats and realleges Counts 1-7 of his Complaint as if fully set forth herein, with respect to each applicable Defendant.

111.    This is an action to substantively consolidate Defendants CannaMed, OB Real Estate, Siskind Legal, Sovereign and Wellington, as set forth in the table below, into the Debtor's bankruptcy proceedings such that each respective Defendant will be deemed a jointly administered bankruptcy debtor pursuant to Section 105 of the Bankruptcy Code

| COUNT | DEFENDANT | RELATED TRANSACTION |
|---|---|---|
| 8 | CannaMed | Liabilities of the Debtor (¶¶21-24) |
| 9 | OB Real Estate | Office Suite Transfers |

| 10 | Sovereign | Talavera Transfers<br>Office Suite Transfers |
| 11 | Siskind Legal | Sovereign Cash Out<br>Stone Cash Out<br>Volkwein Cash Out<br>Talavera Transfers<br>Santa Barbara Transfers<br>Office Suite Transfers |
| 12 | Wellington | Santa Barbara Transfers |
| 13 | FLACC | Sovereign Cash Out, Stone Cash Out,<br>Volkwein Cash Out |
| 14 | Sympatico | Sympatico Transfers |

112.    Given the alter ego status of each respective Defendant as set forth in Counts 1-7 above and the other facts and circumstances set forth above, equity and applicable law require that each respective Defendant be substantively consolidated as a jointly administered bankruptcy debtor.

113.    Based upon the foregoing, under applicable law the entry of an order and/or judgment substantively consolidating the Defendant at issue in each respective Count herein with the Debtor is both necessary and appropriate.

114.    In the event the relief requested in this Count is granted, the Trustee will, by separate motion to be filed in the main case to be served on all creditors and parties in interest, seek entry of an order substantively consolidating Defendant at issue in each respective Count herein with the estate of the Debtor.

WHEREFORE, the Trustee respectfully requests entry of an order and/or judgment against Defendants CannaMed, OB Real Estate, Sovereign, Siskind Legal, Wellington, FLACC and Sympatico: (i) declaring that each Defendant be substantively consolidated with the Debtor to be jointly administered with the Debtor's bankruptcy proceeding; and (ii) for any other relief the Court deems appropriate.

**COUNTS 15 – 30**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO**
**SECTIONS 548(a))(1)(A), 550(a)(1) and 550(a)(2) OF THE BANKRUPTCY CODE**

The Trustee sues Defendants and alleges:

115.    The Trustee restates and realleges paragraphs 1 through 108, as if fully set forth herein.

116.    Pursuant to 11 U.S.C. § 548(a)(1)(A) and/or 11 U.S.C. § 544, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under § 548 of the Bankruptcy Code) before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

> (a) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

117.    Further, pursuant to 11 U.S.C. § 550(a), in a fraudulent transfer action commenced under §§ 544 and 548 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

118.    The transfers identified below that occurred within two (2) years of the Petition Date to Defendant constitute transfers of an interest in property and/or obligation of the Debtor or the alter-ego(s) identified in each count set forth in the table above as set forth herein and are therefore avoidable pursuant to 11 U.S.C. § 548(a)(1)(A) as actual intent fraudulent transfers.

| Count | Debtor / Alter-Ego Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 15 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 16 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 17 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 18 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 19 | Sovereign | Siskind | First Talavera Cash Out |
| 20 | Sovereign | Siskind | Second Talavera Cash Out |
| 21 | Sovereign | Zokaites Properties | Transfer of Tatarow Mortgage to Defendant Zokaites Properties |
| 22 | Sovereign | Gibson | Gibson Transfer |
| 23 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 24 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 25 | Chance | Wellington Zokaites | Santa Barbara Foreclosure Transfer |
| 26 | OB Real Estate | Zokaites & Siskind | Office Suite Sale |
| 27 | Chance | Zokaites Properties | Cross Creek Transfer |
| 28 | Chance | Siskind | Siskind Cash Transfers |
| 29 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 30 | Various | Sympatico | Sympatico Transfers |

119.    Further, the Debtor and its alter-egos as identified in the table herein did not receive reasonably equivalent value for each transfer identified in the table herein, to the extent that the Debtor or its alter-ego identified therein (i) were insolvent at the time of each transfer to each defendant as set forth above or became insolvent as a result thereof; (ii) were engaged or were about to engage in a business or transaction for which the remaining assets of the Debtor or the alter-ego identified in each count set forth in the table herein were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should

have believed, that the Debtor or the alter-ego identified in each count set forth in the table herein would incur debts beyond their ability to pay as they came due.

120. Each defendant identified in each count set forth in the table herein was the initial transferee or the entity for whose benefit the transfer at issue in each count herein was made, and as a result, the Trustee is entitled to avoid each transfer from each Defendant as set forth in each Count herein pursuant to 11 U.S.C. § 548(a)(1)(A) as actual intent fraudulent transfers and to recover all such property for the benefit of the estate or, should the Court so order, the value thereof pursuant to 11 U.S.C. § 550(a)(1).

121. Alternatively, the Defendant(s) identified in each Count set forth in the table above was(were) the immediate or subsequent transferee(s) of the initial transferee for whose benefit the transfer at issue in each count herein was made. As a result, the Trustee is entitled to recover the transfer at issue in each count herein as referenced above, from each Defendant, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550(a)(2).

122. Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of the bankruptcy estate of the Debtor is authorized to the extent that a transfer at issue in each count herein occurred within two (2) years of the Petition Date are avoided pursuant to 11 U.S.C. § 548(a)(1)(A).

WHEREFORE, the Trustee demands judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was fraudulent and avoidable pursuant to 11 U.S.C. § 548(a)(1)(A); (b) and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of each such transfer and

post-judgment interest and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any

claim that each respective Defendant may have against the Debtor, including without limitation,

pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the

Court deems just and proper.

## COUNTS 31-46
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 548(a)(1)(B) OF THE BANKRUPTCY CODE

The Trustee sues Defendants and alleges:

123.    The Trustee restates and realleges paragraphs 1 through 106, as if fully set forth

herein.

124.    Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and/or 544, a Trustee may avoid any

transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was

made or incurred on or within 2 years (under § 548 of the Bankruptcy Code) before the date of

the filing of the petition, if the debtor voluntarily or involuntarily –

> (B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

125.    Further, pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced

under §§ 544 and 548 of the Bankruptcy Code, the Trustee may recover, for the benefit of the

estate, the property transferred or obligation incurred, or, if the Court so orders, the value of such

property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, *i.e.*, any and all subsequent transferees.

126.    The transfers identified in the table herein that occurred within two (2) years of the Petition Date constitute transfers of an interest in property and/or obligations of Debtor or the alter-ego(s) identified in each Count set forth in the table herein, which are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B) as constructively fraudulent transfers. \

| Count | Debtor / Alter-Ego Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 31 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 32 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 33 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 34 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 35 | Sovereign | Siskind | First Talavera Cash Out |
| 36 | Sovereign | Siskind | Second Talavera Cash Out |
| 37 | Sovereign | Zokaites Properties | Transfer of Tatarow Mortgage to Defendant Zokaites Properties |
| 38 | Sovereign | Gibson | Gibson Transfer |
| 39 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 40 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 41 | Chance | Wellington Zokaites | Santa Barbara Foreclosure Transfer |
| 42 | OB Real Estate | Zokaites & Siskind | Office Suite Sale |
| 43 | Chance | Zokaites Properties | Cross Creek Transfer |
| 44 | Chance | Siskind | Siskind Cash Transfers |
| 45 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 46 | Various | Sympatico | Sympatico Transfers |

127.    The Debtor or the alter-ego identified in each Count set forth in the table herein did not receive reasonably equivalent value for each transfer identified in the table to the extent that the Debtor or the alter-ego identified in each Count set forth in the table (i) were insolvent at the time of each transfer at issue in each Count herein was or became insolvent as a result thereof; (ii) were engaged or were about to engage in a business or transaction for which the remaining assets of the Debtor or the alter-ego identified in each Count set forth in the table were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that the Debtor or the alter-ego identified in each Count set forth in the table would incur debts beyond their ability to pay as they came due.

128.    Each Defendant identified in each Count set forth in the table herein was the initial transferee or the entity for whose benefit each transfer at issue was made, and as a result, the Trustee is entitled to avoid and recover each transfer at issue herein pursuant to 11 U.S.C. § 548(a)(1)(B) as constructively fraudulent transfers.

129.    Alternatively, each defendant identified in each count set forth in the table herein was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer at issue herein was made, and as a result, the Trustee is entitled to recover each transfer at issue herein as referenced above from each Defendant identified herein pursuant to 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550(a)(2).

130.    Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of the bankruptcy estate of the Debtor is authorized to the extent that each transfer at issue in each Count herein occurred within two (2) years of the Petition Date are avoided pursuant to 11 U.S.C. § 548(a)(1)(B).

WHEREFORE, the Trustee demands judgment against each Defendant identified in each

respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was fraudulent and avoidable under 11 U.S.C. § 548(a)(1)(B); (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor or the estate of any of its alter-egos, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

### COUNTS 47-63
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
### AND SECTION 726.105(1)(A) OF THE FLORIDA STATUTES

The Trustee sues Defendants Siskind, W. Siskind, Zokaites, Wellington and Zokaites Properties and alleges:

131.    The Trustee re-states and re-alleges paragraphs 1 through 106, as if fully set forth herein.

132.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title or that is not allowable only under § 502(e) of this title.

133.    § 726.105(1)(a), Florida Statutes, provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

134.    Further, pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Chapter 726 of the Florida Statutes, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

135.    The transfers identified in the table herein to each respective Defendant were transfers made with the actual intent to hinder, delay, and/or defraud creditors pursuant to § 726.105(1)(a), Florida Statutes.

| Count | Debtor / Alter-Ego Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 47 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 48 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 49 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 50 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 51 | Sovereign | Siskind | First Talavera Cash Out |
| 52 | Sovereign | Siskind | Second Talavera Cash Out |
| 53 | Sovereign | Zokaites Properties | Transfer of Tatarow Mortgage to Defendant Zokaites Properties |
| 54 | Sovereign | Gibson | Gibson Transfer |
| 55 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |

| 56 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 57 | Chance | Wellington Zokaites | Santa Barbara Foreclosure Transfer |
| 58 | OB Real Estate | Siskind, Siskind Legal, FLACC, Sovereign, Zokaites | Office Suite Transfers |
| 59 | OB Real Estate | Zokaites & Siskind | Office Suite Sale |
| 60 | Chance | Zokaites Properties | Cross Creek Transfer |
| 61 | Chance | Siskind | Siskind Cash Transfers |
| 62 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 63 | Various | Sympatico | Sympatico Transfers |

136.    At the time of each respective transfer identified in the table herein, the Debtor or the alter-ego identified in each Count set forth in the table were, and still are, indebted in an amount greater than each transfer.

137.    At the time of each respective transfer identified in the table herein, the Debtor or the alter-ego identified in each Count set forth in the table had incurred debts beyond their ability to pay as they became due.

138.    As set forth above, the Debtor or the alter-ego identified in each Count set forth in the table were otherwise insolvent at the time(s) of each respective transfer identified in the table herein.

139.    As a result of each respective transfer identified in the table herein, the Trustee has been damaged pursuant to 11 U.S.C. §544(b) for the total value of each respective transfer identified in the table herein.

140.    Each respective Defendant was the initial transferee or the entity for whose benefit each respective transfer as identified in the table above was made, and as a result, the Trustee is entitled to avoid and recover each respective transfer from each respective Defendant

as identified in the table herein under 11 U.S.C. § 544 of the Bankruptcy Code and § 726.105(1)(a) of the Florida Statutes as actual intent fraudulent transfers.

141.    Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein was made, and as a result, the Trustee is entitled to recover each respective transfer, as referenced above, from each respective Defendant pursuant to § 726.105(1)(a) of the Florida Statutes and 11 U.S.C. §550(a)(2).

142.    Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of the Debtor's bankruptcy estate is authorized to the extent that the respective transfers are avoided pursuant to § 726.105(1)(a) of the Florida Statutes.

WHEREFORE, the Trustee respectfully requests entry of judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was fraudulent and avoidable pursuant to § 726.105(1)(a), Florida Statutes; (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNTS 64-80
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
## AND SECTION 726.105(1)(B) OF THE FLORIDA STATUTES

The Trustee sues Defendants and alleges:

143.    The Trustee restates and realleges paragraphs 1 through 106 as if fully set forth

herein.

144.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest

of the Debtor in property or any obligation incurred by the Debtor that is voidable under

applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title

or that is not allowable only under § 502(e) of this title.

145.    § 726.105(1)(b), Florida Statutes, provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent
as to a creditor, whether the creditor's claim arose before or after
the transfer was made or the obligation was incurred, if the debtor
made the transfer or incurred the obligation:

(b) Without receiving reasonably equivalent in value in
exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a
business or a transaction for which the remaining
assets of the debtor were unreasonably small in
relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably
should have believed that he or she would incur,
debts beyond his or her ability to pay as they
became due.

146.    Further, pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced

under Chapter 726 of the Florida Statutes, the Trustee may recover, for the benefit of the estate,

the property transferred, or, if the Court so orders, the value of such property, from – (1) the

initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

147.    The transfers identified in the table herein to each respective Defendant were transfers made without the Debtor or the alter-ego(s) identified in each Count set forth in the table herein receiving reasonably equivalent value in exchange for each respective transfer pursuant to § 726.105(1)(b), Florida Statutes.

| Count | Debtor / Alter-Ego Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 64 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 65 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 66 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 67 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 68 | Sovereign | Siskind | First Talavera Cash Out |
| 69 | Sovereign | Siskind | Second Talavera Cash Out |
| 70 | Sovereign | Zokaites Properties | Transfer of Tatarow Mortgage to Defendant Zokaites Properties |
| 71 | Sovereign | Gibson | Gibson Transfer |
| 72 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 73 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 74 | Chance | Wellington Zokaites | Santa Barbara Foreclosure Transfer |
| 75 | OB Real Estate | Siskind, Siskind Legal, FLACC, Sovereign, Zokaites | Office Suite Transfers |
| 76 | OB Real Estate | Zokaites & Siskind | Office Suite Sale |
| 77 | Chance | Zokaites Properties | Cross Creek Transfer |
| 78 | Chance | Siskind | Siskind Cash Transfers |

| 79 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 80 | Various | Sympatico | Sympatico Transfers |

148.    At the time(s) of each respective transfer, the Debtor or the alter-ego identified in each Count set forth in the table herein were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor or its respective alter-ego were unreasonably small in relation to the business or transactions in which the Debtor or its respective alter-ego were engaged.

149.    At the time of each respective transfer identified in the table herein, the Debtor or the alter-ego identified in each Count set forth in the table had incurred debts beyond their ability to pay as they became due.

150.    As set forth above, the Debtor or the alter-ego(s) identified in each Count set forth in the table were otherwise insolvent at the time(s) of each respective transfer identified in the table herein.

151.    As a result of each respective transfer identified in the table herein, the Trustee has been damaged pursuant to 11 U.S.C. § 544(b) for the total value of each respective transfer identified in the table herein.

152.    Each respective Defendant was the initial transferee or the entity for whose benefit each respective transfer as identified in the table above was made, and as a result, the Trustee is entitled to avoid and recover each respective transfer from each respective Defendant as identified in the table herein under 11 U.S.C. § 544 of the Bankruptcy Code and § 726.105(1)(a) of the Florida Statutes as actual intent fraudulent transfers.

153.    Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein

was made, and as a result, the Trustee is entitled to recover each respective transfer as referenced above from each respective Defendant pursuant to § 726.105(1)(b) of the Florida Statutes and 11 U.S.C. § 550(a)(2).

154.    Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of theestate is authorized to the extent that the respective transfers are avoided pursuant to 11 U.S.C. § 548(a)(1)(B).

WHEREFORE, the Trustee respectfully requests entry of judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was fraudulent and avoidable under § 726.105(1)(B), Florida Statutes; (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNTS 81-97**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.106(1) OF THE FLORIDA STATUTES**

The Trustee sues Defendants and alleges:

155.    The Trustee restates and realleges paragraphs 1 through 106 as if fully set forth herein.

45

156.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of Title 11 or that is not allowable only under § 502(e) of this title.

157.    § 726.106(1), Florida Statutes, provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

158.    The transfers identified in the table herein to each respective Defendant were transfers made without the Debtor or the alter-ego(s) identified in each Count set forth in the table herein receiving reasonably equivalent value in exchange for each respective transfer pursuant to § 726.106(1), Florida Statutes.

| Count | Debtor / Alter-Ego Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 81 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 82 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 83 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 84 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 85 | Sovereign | Siskind | First Talavera Cash Out |
| 86 | Sovereign | Siskind | Second Talavera Cash Out |
| 87 | Sovereign | Zokaites Properties | Transfer of Tatarow Mortgage to Defendant Zokaites Properties |
| 88 | Sovereign | Gibson | Gibson Transfer |
| 89 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |

| 90 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 91 | Chance | Wellington Zokaites | Santa Barbara Foreclosure Transfer |
| 92 | OB Real Estate | Siskind, Siskind Legal, FLACC, Sovereign, Zokaites | Office Suite Transfers |
| 93 | OB Real Estate | Zokaites & Siskind | Office Suite Sale |
| 94 | Chance | Zokaites Properties | Cross Creek Transfer |
| 95 | Chance | Siskind | Siskind Cash Transfers |
| 96 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 97 | Various | Sympatico | Sympatico Transfers |

159.    At the time(s) of each respective transfer, the Debtor or the alter-ego(s) identified in each Count set forth in the table herein were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor or its respective alter-ego(s) were unreasonably small in relation to the business or transactions in which the Debtor or its respective alter-ego(s) were engaged.

160.    At the time of each respective transfer identified in the table herein, the Debtor or the alter-ego(s) identified in each Count set forth in the table had incurred debts beyond their ability to pay as they became due.

161.    As set forth above, the Debtor or the alter-ego(s) identified in each Count set forth in the table were otherwise insolvent at the time(s) of each respective transfer identified in the table herein.

162.    As a result of each respective transfer identified in the table herein, the Trustee has been damaged pursuant to 11 U.S.C. § 544(b) for the total value of each respective transfer identified in the table herein.

163.    Each respective Defendant was the initial transferee or the entity for whose

benefit each respective transfer as identified in the table above was made, and as a result, the Trustee is entitled to avoid and recover each respective transfer from each respective Defendant as identified in the table herein pursuant to 11 U.S.C. § 544 of the Bankruptcy Code and § 726.106(1) of the Florida Statutes as actual intent fraudulent transfers.

164.    Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein was made, and as a result, the Trustee is entitled to recover these each respective transfer as referenced above from each respective Defendant pursuant to § 726.106(1) of the Florida Statutes and 11 U.S.C. § 550(a)(2).

165.    Therefore, in accordance with 11 U.S.C. §§544 and 548, the recovery of property for the benefit of the estate is authorized to the extent that the respective transfers are avoided under 11 U.S.C. § 548.

WHEREFORE, the Trustee respectfully requests entry of judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was fraudulent and avoidable under § 726.106(1), Florida Statutes; (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNTS 98-114**
**ACTION FOR CONSTRUCTIVE TRUST**

The Trustee sues Defendants and alleges:

166.    The Trustee restates and realleges paragraphs 1 through 106 as if fully set forth herein.

167.    The Trustee is the legal title holder to all property of the Debtor and its alter-egos.

168.    The following transfers were fraudulently effected by the Debtor or its alter-ego(s) or alternatively, without fraud but retained by the transferees set forth below under inequitable circumstances.

| Count | Debtor / Alter-Ego Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 98 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 99 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 100 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 101 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 102 | Sovereign | Siskind | First Talavera Cash Out |
| 103 | Sovereign | Siskind | Second Talavera Cash Out |
| 104 | Sovereign | Zokaites Properties | Transfer of Tatarow Mortgage to Defendant Zokaites Properties |
| 105 | Sovereign | Gibson | Gibson Transfer |
| 106 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 107 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 108 | Chance | Wellington Zokaites | Santa Barbara Foreclosure Transfer |
| 109 | OB Real Estate | Siskind, Siskind Legal, FLACC, Sovereign, Zokaites | Office Suite Transfers |
| 110 | OB Real Estate | Zokaites & Siskind | Office Suite Sale |

| Count | Debtor / Alter-Ego Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 111 | Chance | Zokaites Properties | Cross Creek Transfer |
| 112 | Chance | Siskind | Siskind Cash Transfers |
| 113 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 114 | Various | Sympatico | Sympatico Transfers |

169.    As the beneficiary of the transfers set forth herein, each Defendant knew or should have known that transfers at issue in each Count set forth herein were improper.

170.    The recipients of each transfer set forth herein have been unjustly enriched to the detriment of the Debtor and its alter egos, and as a result, a constructive trust should be established against the transfers at issue and all proceeds, products and replacements of each of the subject transfers.

WHEREFORE, the Trustee respectfully requests this Court to enter a judgment against e each respective Defendant, for imposition of a constructive trust lien to be established against the transfers identified herein and all proceeds, products or replacements of the transfers set forth herein, for damages and all such other relief as this court deems just and appropriate.

## COUNT 115-131
## ACTION FOR EQUITABLE LIEN

The Trustee sues Defendants and alleges:

171.    The Trustee restates and realleges paragraphs 1 through 106 as if fully set forth herein.

172.    The Trustee is the legal title holder to all property of the Debtor and its alter-egos.

173.    The following transfers were fraudulently effected by the Debtor or its alter-egos or egregiously, or alternatively, without fraud but retained by the transferees set forth below under inequitable circumstances.

| Count | Debtor / Alter-Ego Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 115 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 116 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 117 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 118 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 119 | Sovereign | Siskind | First Talavera Cash Out |
| 120 | Sovereign | Siskind | Second Talavera Cash Out |
| 121 | Sovereign | Zokaites Properties | Transfer of Tatarow Mortgage to Defendant Zokaites Properties |
| 122 | Sovereign | Gibson | Gibson Transfer |
| 123 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 124 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 125 | Chance | Wellington Zokaites | Santa Barbara Foreclosure Transfer |
| 126 | OB Real Estate | Siskind, Siskind Legal, FLACC, Sovereign, Zokaites | Office Suite Transfers |
| 127 | OB Real Estate | Zokaites & Siskind | Office Suite Sale |
| 128 | Chance | Zokaites Properties | Cross Creek Transfer |
| 129 | Chance | Siskind | Siskind Cash Transfers |
| 130 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 131 | Various | Sympatico | Sympatico Transfers |

174.    As the beneficiary of the transfers set forth herein, each Defendant knew or should have known that transfers at issue in each Count set forth herein were improper.

175.    The recipients of each transfer set forth herein have been unjustly enriched to the detriment of the Debtor and its alter egos, and as a result, a constructive trust should be established against the transfers at issue and all proceeds, products and replacements of each of

the subject transfers.

WHEREFORE, the Trustee respectfully requests this Court to enter a judgment against each respective Defendant, for imposition of an equitable lien to be established against all realty and personalty directly traceable from the transfers at issue herein and all proceeds of the their products, proceeds or replacements, for damages and all such other relief as this Court deems just and appropriate.

## COUNTS 132-138
## ACTION SEEKING APPOINTMENT OF
## A MONITOR FOR THE DEBTOR'S ALTER-EGOS

The Trustee sues each defendant as set forth herein and alleges:

176.    The Trustee re-states and re-alleges paragraphs 1 through 106, as if fully set forth herein.

177.    This is an action requesting the appointment of a monitor over the Debtor's alter-egos pursuant to Section 105 of the Bankruptcy Code.

| COUNT | DEFENDANT | RELATED TRANSACTION |
|---|---|---|
| 132 | CannaMed | Liabilities of the Debtor (¶¶21-24) |
| 133 | OB Real Estate | Office Suite Transfers |
| 134 | Sovereign | Talavera Transfers<br>Office Suite Transfers |
| 135 | Siskind Legal | Sovereign Cash Out<br>Stone Cash Out<br>Volkwein Cash Out<br>Talavera Transfers<br>Santa Barbara Transfers<br>Office Suite Transfers |
| 136 | Wellington | Santa Barbara Transfers |
| 137 | FLACC | Sovereign Cash Out, Stone Cash Out,<br>Volkwein Cash Out |
| 138 | Sympatico | Sympatico Transfers |

178.    Given the nature of the related transactions at issue and the facts and circumstances surrounding such transfers as alleged above, it is necessary and appropriate for a

monitor to be appointed for each respective alter-ego entity.

WHEREFORE, the Trustee respectfully requests entry of an order and/or judgment against the alter-ego Defendants as set forth in each Count hereinabove: (i) appointing a monitor for each; and (ii) for any other relief the Court deems appropriate.

## COUNT 139
## ACTION SEEKING A PERMANENT
## <u>INJUNCTION AGAINST ALL DEFENDANTS</u>

The Trustee sues all Defendants and alleges:

179.    The Trustee realleges Counts 1-138 above.

180.    This <u>is</u> an action requesting the entry of a permanent injunction against Defendants and others pursuant to Fed. R. Civ. P. 65 as incorporated by Fed. R. Bankr. P. 7065.

181.    Given the nature of the transfers and transactions at issue in this Complaint and the facts and circumstances surrounding such transfers as alleged above, it is necessary and appropriate for a permanent injunction to be issued against the Defendants, and all others in custody, possession or control of funds or other property that is the subject of the transfers and transactions at issue in this complaint, in order to fully protect the interests of the estate in regard to recovering such transfers.

WHEREFORE, the Trustee demands the entry of an order and/or judgment against Defendants (i) imposing a permanent injunction against each Defendant, and all others in custody, possession or control of funds or other property that are the subject of the transfers at issue in this Complaint; and (ii) for any other relief the Court deems appropriate.

**G.**    **Reservation of Rights**

182.    The Trustee reserves his right to amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against the Defendants as may be warranted under the circumstances allowed by law.

Respectfully submitted this <u>6th</u> day of August, 2019.

> GENOVESE JOBLOVE & BATTISTA, P.A.
> Counsel to the Chapter 7 Trustee
> 100 S.E. 2nd Street, Suite 4400
> Miami, FL  33131
> Tel.: (305) 349-2300
> Fax.: (305) 349-2310
>
> By:____/s/ Jesus M. Suarez_____
>     John H. Genovese, Esq.
>     Florida Bar No. 280852
>     jgenovese@gjb-law.com
>     Jesus M. Suarez, Esq.
>     Fla. Bar No. 60086
>     jsuarez@gjb-law.com

# **EXHIBIT "A"**
*(Siskind Cash Transfers)*

## Chance & Anthem, LLC

Detailed of Disbursements - Cash & Withdrawals

| Bank | Entity | Type | Date | Received From/ Payee | Disbursement/ Debit |
|------|--------|------|------|----------------------|---------------------|
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/13/15 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/30/15 | Cash | 500.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 11/09/15 | Cash | 2,500.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 11/13/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 11/23/15 | Cash | 5,000.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 11/25/15 | Cash | 500.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 11/27/15 | Cash | 40,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/02/15 | Cash | 2,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/02/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/07/15 | Cash | 1,000.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 12/11/15 | Cash | 100.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/11/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/14/15 | Cash | 2,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/16/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/21/15 | Cash | 2,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/31/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 01/04/16 | Cash | 2,500.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 01/19/16 | Cash | 2,000.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/07/16 | Cash | 300.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/22/16 | Cash | 2,500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/23/16 | Cash | 63.50 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/24/16 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/25/16 | Other Withdrawal | 2,000.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 04/04/16 | Other Withdrawal | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 04/21/16 | Cash | 20.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 04/22/16 | Cash | 1,100.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 06/01/16 | Other Withdrawal | 200.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 06/15/16 | Other Withdrawal | 750.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 06/24/16 | Other Withdrawal | 750.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 07/08/16 | Cash | 20.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 07/29/16 | Other Withdrawal | 600.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 08/08/16 | Other Withdrawal | 300.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 08/26/16 | Other Withdrawal | 3,300.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 08/26/16 | Cash | 900.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 08/30/16 | Cash | 300.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/02/16 | Other Withdrawal | 40.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/06/16 | Other Withdrawal | 3,265.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/06/16 | Other Withdrawal | 500.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/16/16 | Other Withdrawal | 300.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/09/16 | Other Withdrawal | 4,000.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/12/16 | Other Withdrawal | 40.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/14/16 | Other Withdrawal | 250.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 09/16/16 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/21/16 | Cash | 400.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/24/16 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 11/01/16 | Other Withdrawal | 200.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 11/28/16 | Cash | 50.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/27/17 | Cash | 20.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/30/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 02/27/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/07/17 | Other Withdrawal | 75.00 |

| Bank | Entity | Type | Date | Received From/ Payee | Disbursement/ Debit |
|------|--------|------|------|---------------------|------------------------|
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/30/17 | Cash | 40.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/01/17 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/04/17 | Cash | 60.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 05/15/17 | Other Withdrawal | 20.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/24/17 | Cash | 180.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 06/19/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 07/26/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 07/28/17 | Cash | 20.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 08/04/17 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 10/03/17 | Other Withdrawal | 80.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/04/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 10/05/17 | Other Withdrawal | 400.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 102.68 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 112.05 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 102.98 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 103.57 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 107.46 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 103.74 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/11/17 | Walmart | 101.80 |
| Chase 1866 | Chance & Anthem | Withdrawal | 11/30/17 | Other Withdrawal | 50.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 12/05/17 | Walmart | 110.57 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 12/05/17 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 12/14/17 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 12/15/17 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 12/16/17 | Other Withdrawal | 250.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 12/18/17 | Walmart | 100.98 |
| Chase 1866 | Chance & Anthem | Card Purchase | 12/18/17 | Walmart | 104.97 |
| Chase 1866 | Chance & Anthem | Withdrawal | 12/23/17 | Other Withdrawal | 300.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 01/02/18 | Walmart | 141.77 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/02/18 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/02/18 | Cash | 300.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/04/18 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 01/16/18 | Walmart | 135.94 |
| Chase 1866 | Chance & Anthem | Card Purchase | 01/16/18 | Walmart | 115.40 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/16/18 | Cash | 220.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/22/18 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/22/18 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 02/26/18 | Walmart | 101.05 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/06/18 | Other Withdrawal | 20.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/14/18 | Other Withdrawal | 200.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/22/18 | Other Withdrawal | 2,000.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 03/27/18 | Walmart | 140.97 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/12/16 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/13/16 | Cash | 600.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 05/31/16 | Other Withdrawal | 200.00 |

**Cash & Withdrawal Total**    $    **119,769.43**

# EXHIBIT "B"
## *(Tanya Siskind  Cash Transfers)*

## Chance & Anthem, LLC

Summary of Transfers to Tanya Siskind

Source: Bank Statements, deposit detail and canceled checks

| Bank | Entity | Type | Date | Check No. | Received From/ Payee | Disbursement/ Debit |
|------|--------|------|------|-----------|---------------------|--------------------|
| Chase 1866 | Chance & Anthem | Check | 03/01/16 | 1127 | Tanya Siskind | 2,500.00 |
| Chase 1866 | Chance & Anthem | Check | 04/04/16 | 1151 | Tanya Siskind | 3,000.00 |
| Chase 1866 | Chance & Anthem | Check | 06/29/16 | 1210 | Tanya Siskind | 6,000.00 |
| Chase 1866 | Chance & Anthem | Check | 11/01/16 | 1315 | Tanya L. Siskind | 5,000.00 |
| Chase 1866 | Chance & Anthem | Check | 03/29/18 | 1361 | Tanya Siskind | 500.00 |
| | | | | | **TOTAL** | **$  17,000.00** |